W. T. RALEIGH Co. *v.* FORTENBERRY *et al.*\*

(In Banc.   March 9, 1925.)

[103 So. 227.   No. 24428.]

LIMITATION OF ACTIONS. *Written contract of guaranty, not setting out amount of indebtedness, is governed by six-year statute of limitations.*

Where a contract of guaranty in writing, by which the guarantors undertake and obligate themselves to pay the debt of a third person to the creditor of such third person, does not set out the amount of the indebtedness, such a contract is not governed by the three-year statute of limitation (section 3099, Code of 1906; section 2463; Hemingway's Code), notwithstanding resort must be had to evidence *aliunde* of the writing to establish the indebtedness; the governing statute of limitation being the six-year statute (section 3097, Code of 1906; section 2461, Hemingway's Code).

ETHRIDGE and HOLDEN, JJ., dissenting.

———
\*Headnote 1.   Limitations of Actions, 25 Cyc., p. 1038.

APPEAL from circuit court of Neshoba county.

HON. C. E. JOHNSON, Special Judge.

Action by the W. T. Raleigh Company against H. L. Fortenberry and others. Action was dismissed as to the named defendant before final judgment. From a judgment for defendants, plaintiff appeals. Reversed, and remanded.

Appellant the W. T. Raleigh Company, a corporation, sued appellees, H. L. Fortenberry and others, in the circuit court of Neshoba county for the sum of two hundred seventy-nine dollars and twenty cents with interest. Appellee Fortenberry was sued as principal debtor, and the other appellees, E. S. Richardson, W. D. Germany, and H. D. Bassett, were sued as his guarantors. Before final judgment, appellant dismissed as to appellee Fortenberry, who was a nonresident and had not been served with process, leaving the other appellees, his guarantors, alone as defendants. Appellees pleaded the statute of limitation of three years (section 3099, Code of 1906; section 2463, Hemingway's Code) as a defense, to which plea appellant demurred, which demurrer the trial court overruled, with leave to appellant to plead, which leave was declined, and thereupon final judgment was entered, dismissing the cause at appellant's cost, from which judgment appellant prosecutes this appeal.

We believe a copy of the declaration in this cause, and of Exhibits A and B thereto attached, would probably be a fairly succinct statement of appellant's case. Leaving off the caption to the declaration and the signatures to the declaration and exhibits, they are as follows:

"Comes the W. T. Raleigh Company, a corporation organized and doing business under the laws of the state of Illinois, in the county of Stephens, at the village of Freeport, and complains that H. L. Fortenberry was a nonresident at the time of filing this declaration, and has been since, and is now, and E. S. Richardson, W. D. Germany, and H. D. Bassett are resident citizens of Neshoba county, Miss., and for cause of action sets out facts as follows, to-wit: For that whereas, theretofore, to-wit, on

the 13th day of August, 1915, a contract was entered in-
to between the W. T. Raleigh Company, plaintiff, and H.
L. Fortenberry, one of the defendants herein named, in
which the plaintiff agreed to sell and deliver to the said
H. L. Fortenberry goods, wares, and merchandise, and
the said H. L. Fortenberry agreed to pay for the same,
a copy of said contract being hereto attached and marked
Exhibit A, asked to be made a part hereof just as if
fully copied herein. And in consideration that the plain-
tiff, at the special instance and request of the said H.
L. Fortenberry, would sell and deliver to H. L. Forten-
berry on credit all such goods as the said H. L. Forten-
berry should have occasion for and require of the plain-
tiff.

"Plaintiff further alleges that E. S. Richardson, W.
D. Germany, and H. D. Bassett jointly and severally
guaranteed unto the said W. T. Raleigh Company un-
conditionally the full and complete payment to said
plaintiff of any and all indebtedness incurred under the
terms of the agreement entered into between the said
W. T. Raleigh Company and H. L. Fortenberry, and to
all of the terms, provisions, and agreement contained in
said instrument, they fully assented waiving acceptance
of the contract of guaranty and notice of any nature
whatsoever, and agreed that the written acknowledgment
of the said H. L. Fortenberry of the amount due on his
account or that any judgment duly rendered against him
for the money due the company, should in every and all
respects bind and be conclusive against them, a copy of
said agreement being hereto attached and marked Ex-
hibit B and asked to be made part hereof just as if fully
copied herein.

"And the plaintiff, the W. T. Raleigh Company, con-
fiding in the said promises of the defendants, H. L. For-
tenberry, E. S. Richardson, and W. D. Germany, and
H. D. Bassett, did afterwards, to-wit, on August 18, 1915,
and on various other dates thereafter, sell and deliver
to the said H. L. Fortenberry on credit six hundred

eighty-two dollars and seventy cents worth of goods, and that the said plaintiff received on August 24, 1915, a remittance of twenty dollars and twenty-five cents, and on various other dates thereafter certain remittances aggregating the sum of four hundred three dollars and fifty cents which left a balance due April 1, 1916, of two hundred seventy-nine dollars and twenty cents, with interest from said date, all of which will more fully appear by reference to the sworn itemized account hereto attached and marked Exhibit C and asked to be made a part hereof just as if fully copied herein. The plaintiff further alleges that the said H. L. Fortenberry and his guarantors have often been requested to pay the said sum now due, but, having failed and refused, still fail and refuse to pay the same or any part thereof.

"The plaintiff therefore brings his suit for the sum of two hundred seventy-nine dollars and twenty cents with six per cent. interest per annum since April 1, 1916, on said sum, with cost to be taxed, and demands a judgment against the said defendants, H. L. Fortenberry, E. S. Richardson, W. D. Germany, and H. D. Bassett for the same."

Exhibit A—Contract.

"(1)  This agreement made at the city of Freeport, in the state of Illinois, by and between the W. T. Raleigh Company, an Illinois corporation, party of the first part, hereinafter called the company and H. L. Fortenberry of Noxapater, Route 1, in the state of Mississippi, party of the second part hereinafter called the second party, witnesseth:

"(2)  That for, and in consideration of the promises and agreement hereinafter contained to be kept and performed by the parties hereto, the company, unless prevented by strikes, fires, or other accidents caused beyond its control, agrees to sell and deliver to the second party, f. o. b. cars at Freeport, Ill., or at its option at any other regular place of shipment, in such reasonable quantities only as the second party may, from time to time, desire

to purchase all medicines, extracts, and other products manufactured or sold by it, such goods to be sold and delivered to the second party at the usual and customary wholesale prices, such prices to be shown by invoice of each shipment, and said second party agrees to purchase such goods on the above-prescribed terms and conditions, but the company may at any time suspend such sales and shipments, if said second party fails to make a payment as hereinafter provided, or for any other omissions or neglect by said second party.

"(3)    The company will at its option also sell second party for cash or partly or wholly on credit a wagon, such as said second party may choose from current catalogues, circulars, or other descriptions and charge said wagon to his account at its customary cash or part cash and part credit price.

"(4)    The company further agrees to purchase from said second party at any time during the term of or promptly after the termination or expiration of this contract and at the wholesale price then current such medicines, extracts, and other products of its manufacture (wagons excepted) as the second party may then have on hand and unsold, provided that these products are in as good and salable condition when received by the company as when purchased by said second party, and pay or credit second party therefor on the return of such products promptly by prepaid freight to Freeport, Ill., or such other shipping points as may be designated by the company in writing, and provided that said second party shall pay to the company its actual expense of receiving, inspecting, and overhauling all such goods.

"(5)    The second party promises and agrees to pay to the company at its wholesale price f. o. b. cars at Freeport, Ill., or at any other regular place of shipment as aforesaid for all medicines, extracts, and other products sold to him from time to time including any balance due on wagon, as hereinbefore provided by ample cash weekly payments until this account shall be fully paid,

and that upon determination of this contract at the option of either party hereto or by its expiration of limitations hereinafter provided said second party promises and agrees to pay in cash the balance due said company for all medicines, extracts, and other products and wagons sold and delivered to him as hereinbefore provided, but the time of making such payments or any or all of them may be extended by said company without notice to the guaranty of this agreement and without prejudice to any of the interest or rights of said company.

"(6) It is further understood and agreed that, if said second party shall pay his account in full, on or before the 15th day of each month, he will be allowed a discount of three per cent. from the usual and customary wholesale price.

"(7) And it is further agreed between the parties hereto that this contract is subject to acceptance at the home office of said company at Freeport (state of Illinois, and shall be construed as an Illinois contract), and unless previously terminated at the opinion of either party upon written notice shall expire by limitation on the 31st day of December, 1916.

"(8) At the expiration of this contract, by limitation the company agrees to make a new contract with said second party, provided he secures guarantors acceptable to the company thereon, then will not require him to pay his account in full at that time, provided the amount of his purchase and the condition of his account are and have been satisfactory to the company; and, if such new contract is made by the parties hereto, said second party agrees to pay the company the balance due it at the date of the acceptance of the new contract in the manner hereinabove provided.

"(9) And it is further agreed by and between the parties hereto that this contract includes and does and shall constitute the sole, only, and entire agreement between the parties hereto, and shall not be changed or modified in any respect by any person or persons or by

any representative of the company whomsoever, unless such change or modification shall be especially reduced to writing and signed by both of the parties hereto, and then only after the corporate seal of the company shall have been affixed thereto.

"(10) In witness whereof, the parties hereto have set their hands and seals, the company in its corporate name by its president, .thereunto duly authorized, and its corporate seal hereunto affixed and said second party in his own proper person."

### Exhibit B.

"For and in consideration of the W. T. Raleigh Company extending credit to the abovenamed second party, we, the undersigned, do hereby jointly and severally guarantee unto said the W. T. Raleigh Company unconditionally the full and complete payment to said company of any and all indebtedness incurred under the terms of the above and foregoing instrument by the second party named as such therein and to all of the terms, provisions, and agreements contained in said instruments we fully assent, waiving acceptance of this contract of guaranty and all notices of any nature whatsoever, and agree that the written acknowledgment by second party of the amount due on his account, or that any judgment rendered against him for moneys due the company shall in every and all respects bind and be conclusive against the undersigned. And we further agree that in any suit brought on this contract of guaranty by the company no other or further proof shall be required of it, than to establish the amount or sum of money due and owing to it from the said second party and when so proven shall be conclusive and binding upon us, and that any extension of time shall not release us from liability under this contract of guaranty."

Exhibit C to the declaration is an itemized statement of the account between appellant and appellee Fortenberry. It is not deemed necessary to set that out.

*H. L. Austin* and *Wells, Stevens & Jones,* for appellant.

It will be observed from a casual reading of the contract of guaranty that the three defendants who executed the guaranty obligated themselves jointly, severally and unconditionally to pay any amount which Fortenberry might owe to W. T. Raleigh Company.

This contract of guaranty was given as a part of the original agreement and as an inducement to plaintiff corporation to extend credit to Fortenberry. The purpose of the itemized account attached to the declaration was to show in detail the goods, wares and merchandise shipped from time to time, the credits lawfully entered, and the true balance of indebtedness. The issue here does not arise on any dispute between Fortenberry and the plaintiff corporation as to the merits of the claim sued on. Disposition of the case in the trial court was made to turn altogether on the special pleas of the defendant guarantors, attempting to raise by said special pleas the statute of limitations.

It is our contention that the action is not barred; that the contract of guaranty is a separate contract and governed by the limitation applicable to written instruments, or in other words that the right of the plaintiff corporation to pursue the guarantors is measured and defined and governed by the written contract of guaranty, and the procedure in any suit on said written contract of guaranty is a separate matter altogether from any issue that has been or could be raised by Fortenberry. This business transaction, therefore, separates itself into two specific contracts, one a contract between the W. T. Raleigh Company and H. L. Fortenberry; the second, the contract of guaranty between the Raleigh Company and Richardson, Germany and Bassett.

It is this contract of guaranty (Exhibit B) which the three guarantors signed. The original agreement is incorporated in it in order to fix the metes and bounds of the guarantors' liability. But they are made liable by

reason of the contract of guaranty which they alone signed, which has its own date of beginning, and against which a separate statute of limitations runs. The six-year statute which applies to this separable and separate guaranty contract has not yet run, and the guarantors are as much bound today as they ever were. *Western Casket Co.* v. *Estrada et al.,* 116 S. W. (Tex.) 113; *John A. Tolman Co.* v. *Smith et al.,* 150 N. W. (Ill.) 419; *Seabury* v. *Sibley,* 183 Mass. 105.

While we find no facts on all fours with the case at bar in the Mississippi Reports, the principle is well settled that even though the cause of action against the principal debtor is barred by operation of law, the cause of action existing against the surety continues until barred by its own particular statute of limitations. *Johnson* v. *Planter's Bank,* 4 S. & M. 165; *Cohea* v. *Commissioners,* 7 S. & M. 437. For the general doctrine, see 28 C. J. 1016; *Smith* v. *Gillam,* 80 Ala. 296.

*Byrd & Byrd,* for appellees.

The appellant, W. T. Raleigh Company, sued the appellees, H. L. Fortenberry, E. S. Richardson, W. D. Germany and H. D. Bassett for two hundred seventy-nine dollars and twenty cents and interest. The suit is for money due on open account by Fortenberry to the appellant, and the other defendants are sought to be held by reason of a certain contract of guaranty which they signed guaranteeing the payment of any indebtedness owed to Raleigh by the defendant Fortenberry. To the declaration filed by the plaintiff the defendants Richardson, Germany and Bassett filed the general issue plea, and three special pleas. One of the special pleas set up the statute of limitations as a bar to recovery. This plea was demurred to by the plaintiff and the demurrer was overruled by the court. Thereupon the plaintiff declined to plead further and judgment was taken against it.

The demurrer to the plea of the statute of limitations sets up only one ground of demurrer and that is that the

plea does not state a legal defense. We submit that the demurrer was properly sustained for the reason that the statute of limitations is a good defense and can be pleaded to an action such as this and being a good defense and being properly pleaded it then becomes the duty of the plaintiff to reply to it, and failing to reply, he confesses the merit of the plea. 17 R. C. L. 998.

This is exactly the case here. The plea sets up the bar of the three year statute of limitations, section 2463, Hemingway's Code, section 3099, Code of 1906, which statute in express terms says that actions on open accounts shall be barred within three years next after the cause of action accrued. The declaration itself shows that the cause of action is based on an open account for two hundred seventy-nine dollars and twenty cents, due more than three years before the suit was filed. That being true, and the statute being plain and the demurrer admitting the allegations of the plea, the court could put no other construction on it nor look further than the cause of action stated and the limitations admitted by the demurrer and the demurrer was properly overruled. McCluny v. Silliman, 7 U. S. (L. Ed.) 676.

Furthermore if we look at the declaration as a whole, with the exhibits, we can arrive at no other conclusion but that the suit was based on an open account. This court has held that in order to take a case from the bar of the statute of limitations the writing relied on must be such a writing as will establish the amount owed without reference to any other evidence. Foote v. Farmer, 71 Miss. 148, 14 So. 445.

Even the appellant here recognized the fact that other and supplementary evidence was necessary to make out its case for it attached exhibits to its declaration and sued on an open account for two hundred seventy-nine dollars and twenty cents. No man can take the alleged contract alone, without any supplementary or additional evidence and tell how much the defendants agreed to pay or how much the plaintiff is claiming under it. We sub-

mit, therefore, that under the foregoing authorities the demurrer was rightly sustained.

Also, if the account was barred by the statute of limitations of three years, and we submit that it was, then the instrument which secures it is, also, barred. The record shows that the summons was issued more than four years after the cause of action accrued. The right is extinguished because the remedy, that is the suit on open account, is barred, and, therefore, the contract becomes void. Section 2479, Hemingway's Code.

Argued orally by *H. L. Austin,* for appellant.

ANDERSON, J., delivered the opinion of the court.

(After stating the facts as above). The three-year statute of limitations (section 3099, Code of 1906; section 2463, Hemingway's Code) provides as follows:

"Actions on an open account or stated account not acknowledged in writing, signed by the debtor, and on any unwritten contract, express or implied, shall be commenced within three years next after the cause of such action accrued, and not after."

Appellees contend, and the court below so held, this to be an action on an open account not acknowledged in writing signed by the debtor. While appellant's position is that the basis of the action is the guaranty contract, Exhibit B to the declaration, and that the account between appellant and Fortenberry, the principal, made Exhibit C. to the declaration, is not the basis of the action, but simply embodies part of the evidence necessary to make out a case under the guaranty contract, and therefore the six-year statute of limitations governs, and not the three-year statute. We think this question is settled in favor of appellant's contention by *Vicksburg Waterworks Co.* v. *Y. & M. V. R. R. Co.,* 102 Miss. 504, 59 So. 825. The promise to pay, which was the basis of that suit, was in writing and therefore provable by writ-

ing, but the amount to be paid was not in writing but rested in parol. The court said, touching this question, that the action was predicated on a written contract, and the three-year statute of limitations had no application, notwithstanding the written contract left the amount of water furnished to be ascertained by parol evidence. Although the following cases are not squarely in point, they go to sustain appellant's contention. *Cock* v. *Abernathy,* 77 Miss. 872, 28 So. 18; *Masonic Benefit Ass'n* v. *Bank,* 99 Miss. 610, 55 So. 408; *Washington* v. *Soria,* 73 Miss. 665, 19 So. 485, 55 Am. St. Rep. 555.

Appellees, to sustain their position, rely principally on *Foote* v. *Farmer,* 71 Miss. 148, 14 So. 445, and *Hembree* v. *Johnson,* 119 Miss. 204, 80 So. 554. There is no conflict between those cases and *Vicksburg Waterworks Co.* v. *Y. & M. V. R. R. Co., supra.* In the Foote-Farmer case, the court held that where a person secured an advance of money by giving an order for delivery of a county warrant for a certain amount, the cause of action upon its nondelivery was not based on such order as being in itself a promise to pay, or an acknowledgment in writing of an account due, but that the action was based on an unwritten contract and governed by the three-year statute of limitations (section 2670, Code of 1880). It was stated in the opinion in that case that in order to take the case out of the three-year statute it was necessary but the writing, promising to pay the indebtedness, should be in such terms ''as to render any supplementary evidence unnecessary.'' The court in the use of that language, however, had no reference to the amount of indebtedness involved in that case. The question alone discussed and decided was whether the written order on which the suit was based was a sufficient promise to pay any amount whatever. The question whether, if the promise to pay had been sufficient, the amount to be paid could be fixed by parol evidence was not before the court nor discussed.

In the Hembree-Johnson case the court held that the recital in a deed of trust that it was given to secure a

fixed sum of money, and in addition "any further indebtedness due the said Oscar Johnson that may accrue during the year by reason of advancement made to said T. L. Hembree and wife," was not a written promise by the grantors in the deed of trust to pay such open account. The court said in part:

"We have carefully considered the terms and phraseology of the deed of trust here involved, and we fail to find any promise to pay, or any acknowledgment of the indebtedness contained therein, except the eight hundred dollar note."

There was no sort of obligation or promise by the defendant in the writing involved in either one of those cases to pay the indebtedness sued for. Instead, in each of those cases, the writing relied upon simply recited a fact, not a promise.

Under the statute of frauds, a promise to answer for the debt of another need not describe with minute particularity such debt, such contracts like all others are to be read in the light of surrounding circumstances, and, where with their aid or the aid of other writing the debt may be identified with reasonable certainty, the memorandum will be deemed sufficient. 25 R. C. L., p. 649, section 280. If a writing be sufficient to meet the requirements of the statute of frauds, we think it is such a written contract as will be governed by the six-year statute of limitations.

We hold that the suit here is on the guaranty bond; that said bond is the basis and foundation of the recovery sought; that the bond, in explicit and unmistakable terms, obligated appellees to pay the indebtedness sued for. It is true that the bond itself does not name the amount for which the appellees are liable, but it points with certainty where and how that amount may be ascertained by parol testimony. It follows from these views that the judgment of the court below must be reversed.

*Reversed and remanded.*

Ethridge, J. (dissenting).

While the majority opinion does not set out the open account constituting the basis of recovery in this case, it is not pretended that there was any written agreement by the party, to whom the goods were sold, that the account was correct, nor is there any contention that there was ever a recovery of judgment against the buyer of the goods to bring the open account within the provisions of Exhibit B to the declaration, as was evidently contemplated by the parties by the following provision in the contract of guaranty:

"And agree that the written acknowledgment by second party of the amount due on his account, or that any judgment rendered against him for moneys due the company, shall, in every and all respects, bind and be conclusive against the undersigned."

Therefore before any recovery can be had, the open account must be established by testimony *aliunde* the writing constituting the guaranty. The instrument of guaranty nowhere refers to the account sued on, nor does it agree upon the things to be bought, the prices to be paid, nor any of the terms making up an open account.

It seems to me that section 3099, Code of 1906 (Hemingway's Code, section 2463), is too plain in its terms to require a construction. No item of the account is acknowledged in any writing signed by the guarantor. Therefore every element of the contract must be proven by parol so far as liability of the guaranteed person is concerned.

Section 3099, Code of 1906 (Hemingway's Code, section 2463), reads as follows: "Actions on an open account or stated account not acknowledged in writing, signed by the debtor, and on any unwritten contract, express or implied, shall be commenced within three years next after the cause of such action accrued, and not after."

In the case of *Foote* v. *Farmer*, 71 Miss. 148, 14 So. 445, the statute was construed by this court. The court,

speaking through Judge CAMPBELL, held: "The statute mentioned bars actions on any unwritten contract in three years. To take a case out of this statute, there must be a writing evidencing an acknowledgment of indebtedness or promising to pay, in such terms as to render any supplementary evidence unnecessary."

In *Kerr* v. *Calvit,* Walk. 115, 12 Am. Dec. 537, this court held that a contract cannot rest partly in writing and partly in parol; everything resting in parol is extinguished by the written contract. At pages 117 and 118 of this report, the court said:

"The present case, however, is not one where the plaintiff claims the right of disaffirming the contract, but has consummated it by the acceptance of a deed. The deed cannot be considered as an execution of the contract in part only. If an execution at all, it must be of the whole contract, and the articles of agreement are a nullity. If so, the testimony offered in support of the plaintiff's action to show that the consideration expressed in the deed was more than ought to have been paid, could be viewed in no other light than as parol evidence, repugnant to the written contract."

The court has often held in written contracts that the contract is the exclusive evidence of its terms. While a portion of the contract may be in writing and such writing may prove one or more elements of the contract, still, where the contract is not complete, it is an oral or unwritten contract.

In *Hembree* v. *Johnson,* 119 Miss. 204, 80 So. 554, the court had before it an action to recover for goods sold during the life of a deed of trust under a provision in the deed of trust, which recited that the grantors are indebted to Johnson in the sum of eight hundred dollars as evidenced by promissory note, dated January 14, 1913, and due December 14, 1913, and the conveyance was to secure such indebtedness, "and also any further indebtedness due the said Oscar Johnson that may accrue during the year by reason of advancement made to said T. L. Hem-

bree and wife.'' There the deed of trust secured an open
account. In other words, it authorized the trustee to sell
the property conveyed, and to pay the note and account,
but, inasmuch as the account was unknown and was not
referred to in such terms as to identify it, it was held that
the writing did not save it, and that an action on the open
account was barred under the statute. In that case the
deed of trust undertook to secure the payment of the
amount with specific property therein conveyed. In the
present case, the guarantors merely agree to pay what-
ever debt may be contracted.

The dominant purpose of the statute of limitations,
limiting actions on open accounts and unwritten con-
tracts to three years, is to require the action to be brought
while the transactions are comparatively fresh, and where
the evidence may be readily obtained. But where the
writing in its terms contains all the elements of con-
tract, the reason for the statute does not exist, and the
limitation is placed at six years.

If there ever was a case where a short period ought to
be allowed it is upon a contract of this kind, where the
guarantors waived notice of a statement of the account,
and agree to guarantee and be bound by the judgment
rendered against the principal, or by acknowledgment
signed in writing by him. In the very nature of things
in a contract of this kind, the guarantor is at a great dis-
advantage in defending a suit.

The general authorities hold that such contract to be
taken out of the statute must be such a writing as con-
tained all the essential elements of a contract so that the
writing is the highest and best evidence of the contract.
It seems to me that the rule announced by Judge CAMP-
BELL in the case above cited is manifestly a sound and
fair one. That my view of the purpose and policy of the
statute is correct is indicated by other statutes. For in-
stance, section 3118, Code of 1906 (Hemingway's Code,
section 2482), provides for a new promise in writing to
bind a person by acknowledgment of a debt barred by

the statute of limitation. It provides that an acknowledgment or a promise shall not be evidence of a new or continuing contract, whereby to take any case out of the operation of the provision of the chapter on limitations, unless the acknowledgment or promise be made or contained by or in some writing by the party chargeable therewith.

Under this statute, the court, in *Allen* v. *Hillman,* 69 Miss. 225, 13 So. 871, held that a letter from a debtor to his creditor contained an acknowledgment of an indebtedness, and expressing a hope and expectation of paying it, but which was not written to serve as an acknowledgment or new promise, and is not precise and definite as to the debt and its amount, would not be sufficient to stop the running of the statute of limitations. At page 227 of 69 Miss. (13 So. 871) the court said:

"To meet the defense of the statute of limitations, the petitioner introduced numerous letters written by Mrs. Banks, the intestate, to him, which, it is contended, contained acknowledgments and new promises of payment that, under Code 1880, section 2688, took the debt out of the operation of the statute. Many of these letters purported to be in reply to letters from Hillman, and consisted mainly of excuses for nonpayment of the debt due to him, and about which he was writing to her; and they also asked indulgence, and gave assurances that she would do all in her power to pay. The amount of the debt is nowhere mentioned in the letters, nor do they mention or refer to any particular account or statement."

And the court held that they were insufficient and reversed the judgment.

In the case of *Trustees of Canton Female Academy* v. *Gilman,* 55 Miss. 148, the court held the following insufficient: "It will suit my convenience to execute my note for the balance due for rent, payable January 1, 1877."

Judge CAMPBELL, speaking for the court (55 Miss. 152), said: "The writing offered to prove an acknowledgment

of the claim by defendant is too vague and indefinite to have that effect''—citing authorities.

In the case of *Eckford* v. *Evans,* 56 Miss. 18, the court held the following writing insufficient: ''I wrote to Mr. M. about the 1st inst. to know how I should send the money, and have not heard from him. I am going to A. tomorrow, and will send fifty dollars, which is all I can possibly spare at present.''

See *Floyd* v. *Pearce,* 57 Miss. 140; *Mask & Harrison* v. *Philler,* 32 Miss. 237. *In Fletcher* v. *Gillan,* 62 Miss. 8, the court held that, in an action upon an open account, the statute of limitations having been pleaded, the plain-tiff set out in reply an acknowledgment of the debt and a new promise in writing and, in his support of his replica-tion, introduced in evidence two letters written to him by the defendant, in one of which the writer said: ''After hands are paid, appropriate balance due on my account to yourself;'' and in another one said: ''I would like to come there and do your work, so I could pay you what I owe you.'' The court held that these expressions did not constitute any acknowledgment or new promise to pay so as to void the statute of limitation. In the opin-ion Judge CHALMERS, speaking for the court, said: ''This contention cannot be maintained. There is neither a specification of the debt referred, nor any promise to pay a fixed amount, both of which are necessary to sup-port a new promise. The court correctly held that there was nothing to take the debt out of the statute of limita-tions.''

In the case of *Pate Lumber Co.* v. *Southern Railway Co.,* 115 Miss. 402, 76 So. 481, an action was brought by the railway company against the lumber company to recover freight charges, and introduced certain writings in evidence to constitute a written contract to take it out of the statute of limitations. The suit was brought in more than three years and less than six years after the charges fell due, and the defendant pleaded the statute of limitations. The writings introduced were bills of

lading, certain classifications, and tariffs, and it was con-
tended that the rate paid by the lumber company was
less than the rate required by the charges fixed by the
Interstate Commerce Commission.   The lumber com-
pany itself made out the bills of lading on the usual forms
upon forwarding the shipments, but neither the weights
of the outbound shipments nor the rate were inserted in
the bills of lading, but they contained the following:

"Received subject to classifications and tariffs in
effect on the date of issue of this original bill of lading."

Copies of these bills of lading were introduced with-
out objection on the ground that they were copies, the
originals having been delivered to the lumber company,
and not being available.   Judge SMITH, speaking for the
court in that case, said:

"We are of the opinion that the limitation of three
years provided by section 3099, Code of 1906, governs
for the reason that the writings here in question, taken
singly or collectively, do not set forth the terms of any
contract entered into between the parties thereto, but
simply show that appellee has collected from appellant
a less sum of money for transporting lumber than under
the law it should have, by reason of which, we will assume,
the law imposes an obligation upon appellant to account
to appellee for the difference between the money which it
actually and that which it should have paid, thereby giv-
ing rise to a contract, the terms of which are not express,
but are implied by law, so that the case comes squarely
within *Buntyn* v. *Building & Loan Ass'n,* 86 Miss. 454,
38 So. 345."

The majority opinion relies on *Vicksburg Waterworks
Co.* v. *Y. & M. V. R. R. Co.,* 102 Miss. 504, 59 So. 825.
In this case the opinion shows that a written contract be-
tween the two companies was filed as an exhibit to the
declaration, in which contract appears the following
clauses:

"The party of the second part hereby agrees that it
will take from the party of the first part all water re-

quired by it for use at the said tank and for distribution therefrom during the term of this agreement, and that for all water so used it will pay party of the first part six (6) cents per one thousand (1,000) gallons, payments to be made monthly within fifteen (15) days after presentation of bill therefor. If in any month, or part thereof, the meter shall fail to correctly register the amount of water used by the party of the second part, the amount of water used the month preceding and the month following the month in which such failure to register shall occur shall be averaged, and such average shall be taken to be the amount of water used during the month in which the meter shall fail to register.''

The court, in the course of the opinion, said: ''The suit is predicated upon a written contract, and the three-year statute of limitation has no application to this sort of case. It is quite true that the clause of the contract providing for an ascertainment of the amount of water furnished for any particular month does not furnish an exclusive basis for the proof of the amount furnished during the fifty months involved in this controversy; and if such is the theory of the first count in the declaration, it is not maintainable.''

It will be seen from an analysis of this clause of the contract that by the contract the water was to be furnished and accepted; that it was to be paid for at the rate of six (6¢) cents per thousand gallons, and the payments were to be made monthly within fifteen days after presentation of the bill therefor; and, if the meter did not register correctly during any month, the contract provided that the amount used the preceding month and the succeeding month should be averaged, and the water should be paid for during the period during which the meter did not register correctly on such average. This contract made the measure of the meter the basis of payment. All the terms of the contract were specified in the contract, and the source of all information necessary to ascertain all the facts involved were specifically referred to in the contract.

That is quite a different case from the one we have before us. Here the obligation is not contained in the terms of the contract. To create the obligation you must go outside the contract, and for recourse resort to facts outside of the contract. To create the obligation, the open account must be first established. The amount of this contract is not referred to at all. It is indefinite and disputable. The contract points to nothing from which certainty may be obtained except it provides that, if the debtor guaranteed acknowledges the correctness of the debt in writing, they will be bound by it, or, if the judgment is obtained against him by the seller, that they will be bound by such judgment. The account was not acknowledged in writing, neither was judgment obtained, and therefore an open account is still an open, disputable transaction, subject to all the uncertainties and conflicts of oral disputations.

The declaration wholly failed to aver that the contract was acknowledged in writing, or that judgment had been obtained against the principal debtor. Therefore it failed, in my opinion, to state a right of action. The terms of the contract are for the benefit of both parties and, as they agreed upon certain things to be conclusive evidence of the transaction between them, the maxim, *expressio unius est exclusio alterius,* is applicable and should be applied here. Mr. Broom in his Legal Maxims (8th Ed.), at page 650 et seq., discusses this maxim elaborately. He says:

"The above rule, or, as it is otherwise worded, *expressum facit cessare tacitum,* enunciates one of the first principles applicable to the construction of written instruments; for instance, it seems plainly to exclude any increase of an estate by implication, where there is an estate expressly limited by will. So an implied covenant is to be controlled within the limits of an express covenant. Where a lease contains an express covenant on the part of the tenant to repair, there can be no implied contract to repair arising from the relation of landlord and ten-

ant. So, although the word 'demise' in a lease implies a covenant for title and a covenant for quiet enjoyment, yet both branches of such implied covenant are restrained by an express covenant for quiet enjoyment. And where parties have entered into 'written engagements with express stipulations it is manifestly not desirable to extend them by implications; the presumption is that, having expressed some, they have expressed all, the conditions by which they intend to be bound under that instrument.' And it is an ordinary rule that 'if authority is given expressly, though by affirmative words, upon a defined condition, the expression of that condition excludes the doing of the act authorized, under other circumstances than those so defined; "*expressio unius est exclusio alterius.*"'"

The elaborate discussion goes much further, and illustrates the application of the maxim by many cases. In my opinion it ought to be applied here, because it was the duty of the plaintiff to state a case showing a right of action by his contract, and, though the defendant did not demur to the declaration, the demurrer filed to the defendant's plea of the statute of limitations searches the record, and will be applied to the first defect showing a failure in the pleadings to state a cause of action or a defense. 6 Ency. Pl. & Pr. 326, and notes; *State* v. *Bowen,* 45 Miss. 347; *McGavock* v. *Whitfield,* 45 Miss. 452.

I am therefore of the opinion that the judgment of the court below should have been affirmed.

HOLDEN, J., concurs in this dissent.