Melvin JACKSON et al., Appellants,

v.

PAULSEL LUMBER COMPANY,
Appellee.

No. 17147.

Court of Civil Appeals of Texas,
Fort Worth.

Nov. 6, 1970.

Rehearing Denied Dec. 11, 1970.

Goldberg, Alexander & Baker, and G. Dennis Sullivan, Dallas, for appellants.

Christopher, Bailey & Taylor, and M. Ward Bailey, Forth Worth, for appellee.

## OPINION

BREWSTER, Justice.

This suit was brought by Paulsel Lumber Company to recover the sale price of certain building materials that it sold and delivered to Clover Park Construction Company. A joint and several judgment was rendered against all three defendants for $4,842.41, which sum includes a $1,000.00 attorney's fee, and all defendants have appealed.

The plaintiff started selling building materials to Clover Park Construction Company, a Texas Corporation, in 1964. At all times material here the officers of Clover Park Construction Company were Shelby Owens, president, B. G. Stokes, vice president, and Melvin W. Jackson, secretary-treasurer. These three individuals were the only stockholders, the only directors and the only officers of the Corporation and were also the only defendants in this case.

The business of Clover Park Construction Company was that of developing land by buying it, building houses on it and then selling the houses. In 1966 this Corporation failed to pay its franchise tax to the State of Texas and on July 18, 1966, the State forfeited such Corporation's right to do business in Texas. Notice of such forfeiture was not given to the plaintiff, Paulsel Lumber Company, by any of the Corporation's officers or employees and they continued thereafter to order from plaintiff building materials with which to construct the Corporation's houses. The particular building materials involved in this suit, and for the cost of which this suit was brought, were sold and delivered by plaintiff during the period beginning in December, 1966, and ending March 15, 1967. The last transaction had between the parties was on March 15, 1967. These building materials were used to complete several houses that the Corporation was constructing. The defendant, Jackson, the secretary-treasurer of the Corporation, had personally endorsed some notes for the Corporation at a bank and acquired a lien on the Corporation's houses and he ended up foreclosing the lien on these houses, buying them in, and then selling them himself. The plaintiff, Paulsel Lumber Company, has not been paid for its materials that these houses were built with.

This suit was not filed against these defendants until May 23, 1969. This suit for the debt of Clover Park Construction Company was brought by plaintiff against the three named defendants, who were such Corporation's only officers and directors, by virtue of the provisions of Article 12.14, appearing in Vol. 20A of V.A.T.S. (Taxation—General). Judgment was rendered in the trial court against these three defendants on the theory that this statute rendered those defendants, as officers and directors of the Corporation, personally liable for those debts of the Corporation that were incurred after its right to do business had been forfeited.

Defendants contend on this appeal that this action against them was governed by the two year statute of limitation instead of by the four year statute as held by the trial court. Defendants urge four points on the appeal and three of them relate to the limitation question.

Their first three points are argued together and in them they contend that the trial court erred (1) in holding that the signed delivery tickets formed the basis for a suit on a written contract within the meaning of Article 5527, Vernon's Ann.

Tex.Civ.St.; (2) in not holding that Article 5526, V.A.T.S. (the two year statute) barred plaintiff's suit; and (3) in finding that the obligations involved here were evidenced by or founded on a contract in writing.

If this case is governed by the two year limitation statute, it is barred, because suit was not filed until May 23, 1969, which date was a little more than two years after the last order for materials was filled by the plaintiff.

Article 5527, V.A.T.S., provides in substance that actions for debt where the indebtedness is evidenced by or founded upon any contract in writing shall be commenced and prosecuted within four years after the action accrues.

We affirm the trial court's judgment.

Each of the orders for the materials placed by Clover Park Construction Company was made orally. When such order was received at Paulsel Lumber Company, the plaintiff would prepare four copies of an invoice which contained, along with other provisions, the description and the quantity of the items involved in the order. When the plaintiff's truck driver went to deliver the goods he carried with him a copy of this invoice and would present it to one of Clover Park Construction Company's duly authorized representatives who would then check the materials and, on finding that it was all there, he would sign such invoice in behalf of defendants. An exact copy of one of such invoices bearing date of March 6, 1967, after being signed by the corporate representative, is as follows:

TIM PAULSEL  LEE ALLEN PAULSEL

WHEN ERROR IN AMOUNT OCCURS UNIT PRICE TO APPLY, AND, CORRECTION WILL BE MADE.

# PAULSEL LUMBER COMPANY

ADDRESS:
FORT WORTH, TEXAS 76102
800 West Vickery - P. O. Box 725

SAWMILL CONCENTRATION YARD - "SEE FOR YOURSELF AND SAVE MONEY"
FORT WORTH, TEXAS    DALLAS, TEXAS
PHONE ED 6-5376    PHONE TA 6-6247

DATE DELIVERED 3 -6 19 67

SOLD TO  CLOVER PARK CONST CO.

DELIVER TO  601 CLOVER PARK  ARLINGTON

INVOICE TO

ADDRESS

| DELIVERED BY | CUSTOMER'S ORDER NO. DATE ORDER ENTERED | CAR NO. RECEIPT NO. | TICKET MADE BY | CHARGE | C.O.D. | SALE | C.R. | TERMS |
|---|---|---|---|---|---|---|---|---|
| | 3 367 | | JD | XX | | | | NET - NO DISCOUNT |

| QUANTITY ORDERED | THICK NESS | WIDTH | LGTH. | DESCRIPTION | QUAN. DELVD. | FEET | TOTAL FEET | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| 1 | | | DR ONLY | 2/8X6/8-13/4 MAHG W/20X24 LT | 1 | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

THIS INVOICE PAYABLE AT FORT WORTH, TEXAS. ALL CLAIMS AND RETURNED GOODS MUST BE ACCOMPANIED BY THIS INVOICE.

ITEMS SHOWN HEREON

SIGN HERE
Received By ➡ (Signed): B. G. Stokes

| | |
|---|---|
| SUB TOTAL | |
| SALES TAX | |
| TOTAL AMOUNT OF THIS INVOICE | |

No. A 26531

No change in the terms, conditions or prices set forth in this invoice, and no agreement for rebates, refunds or return of merchandise shall be valid unless approved in writing by an officer of this company.

[A33961]

Signed Delivery Copy

Seventeen (17) invoices on this identical form, each signed by one of defendants' duly authorized representatives at the time of delivery of the particular goods, reflect the building materials sold and delivered to the Corporation by plaintiff during the period in question, acknowledge that such items were sold to the Corporation on credit, and contain an express agreement of defendants to pay for such building materials in Tarrant County, Texas. The only difference between the invoice above set out and the remaining sixteen (16) such invoices is that the items ordered on one occasion would differ from those ordered on another occasion and the same man did not sign the invoice for the Corporation each time. No prices relating to the items involved appeared on these invoices at the time they were signed by the corporate representatives.

When the Corporation's representative signed the invoice, plaintiff's truck driver would then leave the goods at the place delivered, and return the signed invoice to plaintiff's office. The plaintiff's accounting employees would then extend the copies of the invoice by placing thereon the prices of the items sold and the totals due by virtue of that sale. A copy of this extended invoice would then be forwarded to the Corporation where its representatives would then check the invoice. All such extended invoices were found by the Corporation to be correct, showing the goods ordered and delivered and the prices agreed on by all, and the totals. The corporation never had any reason to question any such invoice.

The facts above stated are all undisputed.

The controlling question to be determined is whether plaintiff's action for debt is evidenced by or founded upon a contract in writing within the meaning of Art. 5527, V.A.T.S.

The Supreme Court of Texas in the case of International Printing Pressmen and Assistants' Union of North America v. Smith, 145 Tex. 399, 198 S.W.2d 729 (1946), had before it the question of whether or not the indebtedness involved was evidenced by or founded upon a contract in writing within the meaning of Art. 5527, V.A.T.S. In discussing the question, that court had the following to say on page 736 of the opinion: "However, *it is not indispensable that the written instrument relied upon contain an express promise* to do the things for the nonperformance of which the action is brought. It is sufficient if the obligation or liability grows out of a written instrument, not remotely but immediately, *or if the written instrument acknowledges a state of facts from which, by fair implication, the obligation or liability arises.* * * *"* (Emphasis ours.)

That court, at page 736 of the opinion, also quoted with approval the following excerpt from Reyburn v. Casey, 29 Mo. 129: " 'The broad and comprehensive language of the statute evidently embraces all kinds of written instruments, without regard to their mere form or phraseology, which imply a promise or agreement to pay money, and is not restricted to such as have the requisites of promissory notes, or to such instruments as contain an express promise or agreement upon their face to pay. It is sufficient if the words import a promise or agreement, or that this can be inferred from the terms employed.' "

The Texas Supreme Court at page 737 of its opinion in the same case quoted with approval from the opinion of the Utah Court in the case of Bracklein v. Realty Insurance Co., 95 Utah 490, 80 P.2d 471, as follows: " ' * * * if the fact of liability arises or is assumed or imposed from the instrument itself, or its recitals, the liability is founded upon an instrument in writing. *If the instrument acknowledges or states a fact from which the law implies an obligation to pay, such obligation is founded upon a written instru-*

*ment within the statute.'"* (Emphasis ours.)

The Supreme Court went on to hold on page 737 in substance that Art. 5527, V.A.T.S., should not be given a strict literal interpretation, but should be given a reasonable interpretation as would give it effect according to the spirit and intention of the statute.

The case of O'Brien v. King, 174 Cal. 769, 164 P. 631 (1917) was a suit for debt involving the question of which limitation statute was applicable. The writing involved was as follows:

" 'San Fran., June 21st, '11.

" 'Received from Miss Hannah O'Brien, on June 21st, 1911, $450 (four hundred and fifty dollars) in U. S. gold coin, at 5 per cent, interest.

" '(Signed) Jeremiah King,
" '987 Folsom St., San Fran.' "

The suit was to recover the $450.00 plus interest. The following is from the opinion at page 632: "It is generally held, in states having statutes similar to our own, that under similar facts the action is covered by the period of limitation applicable to suits founded upon written instruments."

That court then quotes the part of the opinion of the Reyburn v. Casey case, supra, that we have quoted above, stating in substance that it is not necessary that the writing contain an express promise to pay. The court said: " 'It is sufficient if the words import a promise or agreement, or that this can be inferred from the terms employed.' "

The California Supreme Court in speaking of the holding in the Reyburn case stated at page 633: "The theory of these cases was that the paper, in each instance, acknowledged the existence of facts necessarily and directly importing the obligation which was made the basis of suit, *and this was held to be sufficient.*" (Emphasis ours.)

The Texas Supreme Court in the International Printing Pressmen case, supra, has quoted this doctrine with approval.

In the case of Donada v. Power, 184 S.W. 793, at page 798 (San Antonio Tex.Civ.App., 1916, no writ hist.), the court said: "The above cases indicate a tendency upon the part of our courts not to give a strict construction to the words 'contract in writing' such as would classify all contracts as oral contracts which are partly written and partly oral. * * *."

■ Courts have repeatedly held that the writing in question, in order to constitute a contract in writing within the meaning of the four year limitation statute does not necessarily have to be signed by both parties to the contract. 37 T.J.2d 145, note 19; Republic Supply Co. v. Waggoner, 283 S.W. 537 (Amarillo Tex.Civ.App., 1926, writ ref.); and Ferguson v. Parker, 176 S.W. 2d 768 (Dallas Tex.Civ.App., 1943, ref., w. o. m.).

The following is from the opinion in this Ferguson case at page 770: "The doctrine is well settled that an instrument purporting to set forth the mutual obligations of the parties * * * signed and performed by one of the parties and acquiesced in by the other, is to be regarded as a written contract."

An annotation on this question appears in 111 A.L.R. 984. The following is from that annotation at page 986: "Where a promise to pay money is in writing, the fact that the sum to be paid is not expressed in the writing, but is, by the terms thereof, to be thereafter ascertained, does not take the action out of the operation of the ten-year statute of limitations. Carr v. Thompson (1878) 67 Mo. 472; Miner & Frees v. Howard (1902) 93 Mo.App. 569, 67 S.W. 692. The amount to be paid may be shown by evidence aliunde. Brown v. Irving (1925; Mo.App.) 269 S.W. 686; Lorberg v. Jaynes (1927; Mo.App.) 298 S.W. 1059."

The case of Lander v. Boykin, 351 S.W. 2d 594 (Texarkana Tex.Civ.App., 1961, no writ hist.) holds that the four year limitation statute applied to a suit based on a written instrument that was incomplete to the extent that parol evidence was necessary (1) to prove the place where the work of paving was to be done, and (2) to prove the amount of compensation that was earned by performance of the paving job.

The following is from an annotation in 129 A.L.R. 611: "The necessity of introducing evidence extrinsic to a written contract to establish the amount of money to which the plaintiff is entitled under such contract, where there appears from the written contract an obligation of the defendant to pay money of some amount, conditionally or unconditionally, does not render inapplicable a statute of limitations pertaining to written contracts or writings for the payment of money: Kinney v. Reed (1914) 164 Iowa 337, 145 N.W. 900; W. T. Raleigh Co. v. Fortenberry (1925) 138 Miss. 410, 103 So. 227; Carr v. Thompson (1878) 67 Mo. 472; Missouri, K. & T. R. Co. v. American Surety Co. (1921) 291 Mo. 92, 236 S.W. 657, supra, II b; Brown v. Irving (1925; Mo.App.) 269 S.W. 686; Lorberg v. Jaynes (1927; Mo.App.) 298 S.W. 1059; W. T. Rawleigh Co. v. Graham (Wash.) (reported herewith) ante, 596."

The case of Kerby v. Collin County, 212 S.W.2d 494 (Dallas Tex.Civ.App., 1948, no writ hist.), involved the question of whether the suit there was barred by the four year limitation statute and in discussing the question the court said at page 496, the following: "The written evidence need not have been comprised in a single document, but could consist of several in combination (20 Tex.Jur. p. 308, sec. 100); nor does the statute require that all the undertakings assumed be set out in the memorandum (Morrison v. Dailey, Tex.Sup., 6 S.W. 426; Simpson v. Green (by the Commission), 231 S. W. 375; Cantrell v. Brannon, Tex.Civ.App., 16 S.W.2d 400, 402. Nor was it required that the consideration for the undertaking,

that is, the salary to be paid, be stated in the memorandum, as same was included by implication and could be shown otherwise. 20 Tex.Jur. p. 315, sec. 105."

Where goods are ordered by a written order, even though the order contains no express promise to pay, the four year limitation statute is applicable. Laredo Electric L. & M. Co. v. United States Electric L. Co., 26 S.W. 310 (Tex.Ct. of Civ.App., 1894, no writ hist.).

The case of City of Ft. Smith v. United States Rubber Co., 184 Ark. 588, 42 S.W.2d 1004 (1931), involved a suit for the sale price of some fire hose which was ordered over the telephone. The following is from the opinion: "Finally, it is argued that the order for hose in March, 1925, was an oral contract, made by telephone, and is barred by the three-year statute of limitations. We cannot agree with appellants in this contention. It is true the order was given over the telephone, but later it was confirmed in writing, was accepted by appellees in writing by shipping the hose and rendering invoice. This was a written contract."

The following is from an annotation on the subject appearing in 3 A.L.R.2d 836: "§ 33. Receipts. A written instrument acknowledging the receipt of money and containing an express promise to repay such money, or setting forth a state of facts from which the promise can be implied, may constitute a contract in writing with respect to the statute of limitations."

The cases dealing with the question we have here are confusing, in that the holdings in many of such cases conflict. In some such cases the decisions are reached by applying a strict literal construction to the provisions of Art. 5527, V.A.T.S. In others the statute is liberally construed in deciding the case.

■ We are convinced, after a rather thorough examination of the cases, that a strict construction should not be applied by

the courts in determining what does and what does not constitute a "contract in writing" within the meaning of Art. 5527, V.A.T.S.

■ We hold that the trial court was correct in concluding that the cause of action sued on here was evidenced by or founded upon a contract in writing and that the four year statute is therefore applicable.

We are familiar with the cases that hold that a mere receipt for money or property is not a contract in writing. We hold that those decisions are not applicable to the facts of this case.

The instrument that the admittedly authorized employees of Clover Park Construction Company executed at the time of each delivery was much more than just a receipt for such materials. Contained therein was the statement or acknowledgment that Paulsel Lumber Company had on the date specified therein sold to Clover Park Construction Company the materials listed on such invoice on credit and that Paulsel Lumber Company had delivered the materials listed thereon to the Construction Company on the date shown in the invoice. Also contained therein above the signature of the buyer's duly authorized representative were the following words: "This invoice payable at Fort Worth, Texas. All claims and returned goods must be accompanied by this invoice."

We hold that these words in effect constitute an express agreement or promise by the buyer to pay the seller for the materials listed on the invoice at Fort Worth, Texas. This is the very obligation that is here being sued upon.

■ But even if we were wrong in so concluding, the case still must be governed by Art. 5527, because these signed writings unquestionably acknowledged in writing the existence of a set of facts from which the law implies an obligation to pay, and since that is true the obligation sued on is founded upon a written contract within the meaning of Art. 5527, V.A.T.S.

In addition to that, in this case, shortly after the delivery of each order of materials, the invoices were extended by plaintiff's employees to show the price per item and the total bill for the materials. Plaintiff mailed a copy of each such invoice to the buyer. Defendants acknowledged all such invoices to be correct and no one has ever disputed any of them.

A number of cases have been decided by our courts in determining what constitutes a written contract within the meaning of Art. 1995, Sub. 5, V.A.T.S. That statute provides in substance that suit can be brought in the county where defendant has *contracted in writing* to perform an obligation.

The case of Hurlbut v. Lyons, 405 S.W. 2d 398 (El Paso Tex.Civ.App., 1966, writ dismissed), has facts similar to those involved here, with the exception that the instrument providing for the place of payment was not signed by anybody. The court held that such instrument was sent to and received by defendant and was an integral part of the contract and that it, along with a signed delivery ticket, constituted a contract in writing within the meaning of the venue statute.

Such a conclusion could only be reached by applying a very liberal construction to the phrase "contracted in writing."

We have not been referred to any reason, nor can we think of any, why the words "contract in writing" as used in the venue statute should be given a different meaning and construed differently from the construction of the same words when used in a statute of limitations.

Other cases involving the venue statutes and making similar holdings are the following: Dowdell v. Ginsberg, 244 S.W.2d 265 (Fort Worth Tex.Civ.App., 1951, no writ hist.) ; Beasley v. Barshop, 352 S.W.2d 927

(San Antonio Tex.Civ.App., 1961, no writ hist.); and Manford v. Kelley Manufacturing Company, 350 S.W.2d 209 (Houston Tex.Civ.App., 1961, no writ hist.).

We conclude that these venue cases wherein the words "contract in writing" are construed liberally are persuasive and that we should give them consideration in deciding this case.

Appellant relies principally upon the case of Bailey-Moline Hardware Co. v. Modern Woodmen of America, 89 S.W.2d 246 (Fort Worth, Tex.Civ.App., 1935, no writ hist.).

At the time the Bailey-Moline case was decided this court did not have the library facilities at its disposal that we now have. The court in that case held that the ticket signed at time of delivery of the goods was not a contract in writing because it did not contain an express promise to pay. The court stated: "We believe it was the intention of the Legislature to provide a four years' period of limitation upon written promises to pay and not upon contracts so incomplete that the law must come to the aid of the parties and imply the promise, as it would have to do in this case if we should construe it otherwise."

We believe that the holding of the Bailey-Moline case, supra, is not the law in Texas at this time. We are convinced that it is not necessary for the writing in question to contain an express promise to pay and this is illustrated in the cases cited above. The holding in the Bailey-Moline case was reached by applying a strict, rather than a liberal construction, and was decided without any supporting authorities.

Even if the Bailey-Moline case is a correct holding, it is distinguishable from the case at bar in that in this case the writing in question did contain an express promise to pay in Tarrant County, Texas, for the goods delivered by plaintiff. Such holding would therefore not control a decision in this case.

Appellants' first three points, which all relate to the limitation question, are overruled.

By their fourth and last point appellants contend that the trial court erred in holding that plaintiff could recover an attorney's fee in this case.

This was clearly a suit for materials furnished within the meaning of Art. 2226, V.A.T.S.

That statute provides in substance that: (1) if plaintiff has a claim for materials furnished, and (2) if he presents the claim to defendant, and defendant thereafter lets 30 days go by without paying such claim, and (3) if plaintiff then employs an attorney and sues such defendant, and (4) if the plaintiff in such suit obtains a judgment for a part or all of such claim, he can also in such suit recover from defendant a reasonable attorney's fee.

These four factors are all present in this case and appellants do not even contend that they are not present.

Their contention is that even though the suit is to recover the sale price of the building materials furnished by plaintiff and even though all the requirements of Art. 2226 have been met, the plaintiff still cannot recover an attorney's fee in the case because it happens to be either a suit for breach of contract or a suit on a special contract.

We overrule this contention. Article 2226 makes no such provision as that contended for by appellants. It is difficult to visualize a situation where one person would have furnished building materials to another under circumstances where the one receiving such materials would be expected to pay for them without a contract being involved. In each such instance where the purchaser failed to pay for the materials furnished and the seller sued

him for the sale price, such suit would be one for breach of contract.

If it were the law, as contended by appellants, that in instances wherein a suit for the sale price of materials furnished was founded on a breach of contract, that an attorney's fee could not be recovered under Art. 2226, then such statute would be nullified. All such suits for materials furnished that we can think of are breach of contract suits and are suits on special contracts.

We hold that the questions of whether or not a suit for materials furnished is based on a breach of contract and whether or not such suit is one brought to recover on a special contract are wholly immaterial in determining if an attorney's fee is recoverable under Art. 2226 in a case brought to recover for the sale price of materials furnished.

■ If the plaintiff establishes the four factors set out in Art. 2226 that are enumerated above in instances where the suit is brought to recover the sales price for materials furnished, he is then entitled to the recovery of an attorney's fee under that statute, without regard to whether the suit is for breach of contract or a suit on a special contract.

In support of their contention under this point four, appellants cite Mercantile National Bank at Dallas v. Hudgens, 412 S.W.2d 364 (Fort Worth Tex.Civ.App., 1967, ref., n. r. e.) and Burney v. Ibarra, 415 S.W.2d 517 (San Antonio Tex.Civ. App., 1967, ref., n. r. e.).

We realize that the holding that we make on this point on the attorney's fee point is in direct conflict with the holding in the Burney case, supra, and with the holdings in some of the Court of Civil Appeals opinions that it cites as authority for its holding. We think those cases are clearly wrong on this point. Some of such cases cited in the Burney case were decided by this court. Both cases relied on by appellants cite the Supreme Court

case of Meaders v. Biskamp, 159 Tex. 79, 316 S.W.2d 75 (1958), as authority for the proposition that if a suit for the recovery for the price of labor or materials furnished is based upon a special contract, or if it happens to be in the form of an action for breach of contract, attorney's fees are not then recoverable under Art. 2226, V.A.T.S.

The citation of the Meaders case as authority for that legal proposition is erroneous because the Meaders case makes no such holding. A careful reading of the opinion will reveal that fact.

On researching this question we believe that this confusion probably arose because of a misinterpretation of the Supreme Court's holding in the Meaders v. Biskamp case, supra.

The Supreme Court, apparently realizing that some courts were misinterpreting its holding in the Meaders case, in its opinion in the case of Langdeau v. Bouknight, 162 Tex. 42, 344 S.W.2d 435 (1961), spelled out again what it had held in the Meaders case by saying, at page 441, the following: "In Meaders v. Biskamp, supra, as in this case, the plaintiff relied for recovery of attorney's fees upon the 'sworn account' provision. What we there said, 'it (sworn account) does not mean transaction between parties resting upon special contract' *was not a holding that recovery of attorney's fees under any other provision of Art. 2226 may not rest upon a contract basis.* It was simply a holding that a recovery under the 'sworn account' provision cannot be had upon a special contract." (Emphasis ours.)

The Meaders case was not one to recover for materials furnished or labor done. The only hope to bring it under Art. 2226 and recover attorney's fees was on the theory that it was a sworn account action. The court merely held that such suit was actually one on a special contract instead of being a suit on a sworn account within the meaning of the statute and that

since this was true attorney's fees were not recoverable in that case.

Among the Court of Civil Appeals opinions decided after the Meaders case that have stated in their opinions that if a claim for labor done or material furnished arises out of a special contract that attorney's fees cannot be recovered under Art. 2226 are Ford Motor Company v. Davis Brothers, Inc., 369 S.W.2d 664 (Eastland Tex.Civ.App., 1963, no writ hist.) and Parks v. Benson Co., Builders, 393 S.W.2d 700 (Fort Worth, Tex.Civ.App., 1965, ref., n. r. e.). These cases also erroneously cite the Meaders v. Biskamp case, supra, as authority for such holding, and this is where the confusion all started. A number of other cases have since then made similar holdings and have cited the cases we have mentioned as authority for their holding.

We are convinced that the law in Texas is that the only type of case where the question of whether the action is one for breach of contract or a suit on a special contract has any materiality at all is in cases where the problem before the court is to decide whether attorney's fees can be recovered in the particular action on the theory that it is a sworn account action within the meaning of Art. 2226. See Meaders v. Biskamp, supra.

If the suit fits into any of the other categories mentioned in Art. 2226, other than the sworn account actions, then the fact that the suit also happens to be based on a breach of contract or be a suit on a special contract is wholly immaterial. Such fact, in those instances, does not affect plaintiff's right to recover an attorney's fee as long as the other elements of the statute are present.

The following cases support our conclusions on this attorney's fee point: Tenneco Oil Company v. Padre Drilling Company, 453 S.W.2d 814 (Tex.Sup., 1970), and Langdeau v. Bouknight, 162 Tex. 42, 344 S.W.2d 435 (1961).

The following is from the opinion in the Tenneco Oil Company case, 453 S.W.2d at page 820: "We are not to be understood as holding that claims for personal services rendered and labor done cannot be founded upon contract. A contract for purely personal services or for labor only will support an award of an attorney's fee."

The trial court's judgment is affirmed.