MUSSER v. FIRST NAT. BANK OF CORINTH et al.

(Division A. May 1, 1933.)

[147 So. 783. No. 30139.]

874

Ely B. Mitchell, of Corinth, for appellant.

C. L. Sumners, of Corinth, for appellee.

**McGowen, J.,** delivered the opinion of the court.

On March 29, 1919, W. L. Elledge executed three notes to H. C. Musser, due in one, two, and three years thereafter, and secured payment of said notes by a trust deed on the land here involved.

Thereafter the First National Bank took a second trust deed on the same property to secure an indebtedness to it, and from time to time the bank renewals which recited that it was a second trust deed, the last renewal being on December 30, 1927.

On July 18, 1929, W. L. Elledge executed to P. W. North a trust deed on the same property which appears, on its face, to be a first lien, and North delivered to Elledge his check for three thousand eight hundred sixty-six dollars on the First National Bank of Corinth, which check Elledge indorsed to the bank in payment of his indebtedness to it and which action so appears on the bank's books.

The three notes of Elledge to Musser were barred by the statute of limitations, the first one on March 29, 1926, the second on March 29, 1927, and the third one on March 29, 1928.

On June 20, 1928, Elledge wrote Musser a letter in which he agreed that he would not plead the statute of limitations, and Musser now alleges that this latter constitutes a renewal of the obligation.

During the period from March 29, 1926, until six

months after March 29, 1928, there was no entry of renewal or extension placed on the margin of the record of Elledge's trust deed to Musser as required by section 2154, Code of 1930, but in the latter part of 1930, after the debt had become barred by the statute of limitations, Ely B. Mitchell, as attorney made an entry on the margin of the Musser trust deed that Elledge had agreed not to plead the statute of limitations. This entry was not attested by the clerk.

On December 12, 1928, North sold and transferred Elledge's note and trust deed, the note for three thousand eight hundred sixty-six dollars, to the First National Bank, and in 1931 Mitchell, as substituted trustee, was proceeding to foreclose the Musser deed of trust, when the First National Bank filed its bill seeking to have its deed of trust declared a first lien on the property, and to prevent a sale thereof, alleging that a sale under that deed of trust which appeared of record to be barred, as did the note it secured, would be void, and later, Mitchell having proceeded to sell the property, the bank amended its bill and alleged that the property had been sold, and that the sale was void, and prayed that the deed of trust held by it, which it had acquired from North, be foreclosed, and that Musser's claim, if any, be subordinated to the bank's claim. It also alleged that North had taken the deed of trust on the land in good faith for a valuable consideration without notice, and that the bank had acquired North's interest in Elledge's note in good faith, for a valuable consideration.

Musser charged fraud in the transaction between Elledge and North and the First National Bank, and also charged that the bank and North had notice of the extension and he made his answer a cross-bill, and sought foreclosure. The material allegations of his cross-bill were denied by the bank, and on the trial the above facts were developed.

The chancellor entered a decree declaring the Musser

deed of trust void in so far as it affected the North deed of trust held by the First National Bank, and ordered a foreclosure of the First National Bank's deed of trust to satisfy the debt. The chancellor further found and ordered that, if there was any excess, after the payment of the bank's debt, it should be paid to Musser, in effect holding that as between Musser and Elledge the letter alleged to be a renewal was binding, and canceled the sale by Mitchell under the Musser deed of trust.

There was no evidence of any actual knowledge by Mitchell, or the First National Bank, except such as was shown by the record; all the deeds of trust having been duly placed of record immediately after their execution.

There was no evidence tending to show any fraud or collusion between North and the bank, unless it be said that North was a director of the bank, and, as such, knew of the second deed of trust held by the bank against Elledge.

We might well rest this decision upon the finding of fact by the chancellor that North was a subsequent purchaser for a valuable consideration without notice of any effort to renew the deed of trust by Elledge in favor of Musser. Much, however, is said in the brief of the appellant about constructive notice and the facts of the record requiring further investigation by North and the bank, and that such inquiry would have developed the alleged letter of extension written by Elledge to Musser on June 20, 1928.

We think, in the light of the facts as disclosed by the record, there is no merit in the contention that either North or the bank are bound to have known what appeared aliunde the face of the record. There is no question but that the five hundred dollars first due on the Musser debt had been barred for two years; that another five hundred dollars had been barred for more than one year, and that, when the alleged so-called renewal was written by Elledge, the last five hundred, the third note,

had been barred for about three months. Where a debt is barred, the mortgage cannot be enforced. Section 2290, Code 1930; Huntington v. Bobbitt, 46 Miss. 528; Maddux v. Jones, 51 Miss. 531.

This series of notes was barred without question six years from their respective due dates. There was no effort at a renewal or extension until after the notes had been barred thereby the lien of the deed of trust and the notes was dead.

Section 2313 Code 1930, reads as follows: ''The completion of the period of limitation herein prescribed to bar any action, shall defeat and extinguish the right as well as the remedy; but the former legal obligation shall be a sufficient consideration to uphold a new promise based thereon.''

We have not set forth the letter, because, having been written on June 20 by Elledge to Musser, we take it for granted, without so deciding, that this letter would be sufficient to create a new promise to pay the barred debt.

In the case of Proctor v. Hart, 72 Miss. 288, 16 So. 595, 596, this court held that the effect of the statute was not only to deny the remedy and bar the action, but to extinguish the right itself upon the completion of the period of limitation, and that, where a note was given in an instrument which reserved a vendor's lien, the giving of the new note does not revive the lien or create a new lien. There the court asked this question: ''Was the vendor's lien revived by the execution of the note to the Harts after the bar of the statute of limitations had attached?'' It was answered as follows: ''The answer is simple, as it appears to us. Under the law as it stood until the adoption of the Code of 1880, controversies were constantly arising between citizens as to the effect of new promises in writing to pay barred debts, the adjudications having, up to that Code's adoption, uniformly held that our statute of limitations denied the remedy, but left the right unaffected—the right remained, al-

though the remedy was lost. It followed from this view that, with a waiver of the bar of the statute shown by a new promise in writing to pay the barred note, the debt itself, with all its incidents, might be proceeded for with the restoration of the remedy.''

The opinion then sets out the statute, the same as now, and further says: ''The change wrought by this new statute is radical. Not only the remedy is denied, the action barred, but the right itself is extinguished upon the completion of the period of limitation. The remedy and the right, whatever it was, are alike destroyed. There remains nothing to revive. A new contract evidenced by a new promise in writing, may be made, and the former legal obligation may be sufficient consideration to uphold it,. but it is no longer the revivifying of a right theretofore unenforceable by reason of a remedy being denied merely. It is a new contract, based upon the former legal liability as its consideration; it is the creation of a new right, and a new remedy for its enforcement. The extinguished right, the original debt and all its incidents, as well as the lost remedy, are all destroyed upon the completion of the period of limitation, under our present statute. The promissory note made by the appellant to the appellees after the bar had attached, is clearly such a new promise as creates personal liability, but it does no more. It does not revive and restore a dead debt with all its incidents.''

This case has been cited and approved as will be found in the following cases: Trowbridge v. Schmidt, 82 Miss. 475, 34 So. 84; Cox v. American F. & L. Mortgage Co., 88 Miss. 88, 40 So. 739; Central Trust Co. v. Meridian Light & Ry. Co., 106 Miss. 431, 63 So. 575, 51 L. R. A. (N. S.) 151; and Rogers v. Rosenstock, 117 Miss. 144, 77 So. 958; Greene v. Greene, 145 Miss. 97, 110 So. 218, 49 A. L. R. 565.

The contention of the appellee that the bank or North were bound to inquire of Musser or Elledge beyond what

the record showed would, in effect, nullify this statute, and an abstractor of title would not be safe in taking the face of the records as showing the fact of the bar of limitations. After the lien of the first mortgage by Musser became dead, it could not be revived, and Musser lost his priority when he permitted the bar of the statute of limitations to become complete.

Some suggestion was made that there would be an estoppel of the bank because it held the original of what was conceded to be a second or subordinate deed of trust. There is no showing in this record that either the bank or North caused Musser to do or not to do, to suffer or not to suffer, anything. Allowing the bar of the statute of limitations to become complete, was the act of Musser uninfluenced, so far as this record shows, by either North or the bank?

Some suggestion is also offered that the decree of the court allowing Musser to enforce his deed of trust under the renewal letter as to any excess of the bank's debt is beside the mark, for the reason that part of the decree is against Elledge, and it is recited that it is because Elledge declined to plead the statute of limitations. At any rate, Musser cannot complain here of that part of the decree. It is unnecessary for us to say whether or not, as a matter of fact, the socalled renewal letter was, in fact, a renewal, or to say what effect, if any, it had.

On the main point, the chancellor found as here indicated, and we think the decree, in so far as the bank is concerned, is correct.

Affirmed.