PATRIDGE *v.* McATEE

No. 39740          October 17, 1955          82 So. 2d 711

July 15, 1955                    81 So. 2d 714

*Rupert Ringold,* Winona; *Hedgepeth, Ewing & Hedge-peth,* Jackson, for appellant.

*Morgan & Morgan,* Kosciusko, for appellee.

APPELLANT IN REPLY.

HALL, J.

On March 12, 1953, appellant and appellee entered into the following agreement for the purchase and sale of certain marked trees on lands owned by appellee in Attala County:

"Whereas, the undersigned W. H. McAtee of Brookhaven, Mississippi is the owner of certain real estate

with standing timber located thereon, described as follows, to-wit:

"That certain tract of land situated in Attala County, Mississippi known as the E. W. McAtee Estate property, more particularly described as: The SW¼ and the SE¼ of the NW¼ and the E½ of the SW¼ of the NW¼ and three acres in the southeast corner of the W½ of the SW¼ of the NW¼, being three acres long north and south, and one acre wide east and west, of Section 33, Township 13, Range 6, containing 223 acres, more or less; and

"Whereas, the said W. H. McAtee, hereinafter referred to as the SELLER, is desirous of selling certain of the timber thereon, consisting of 4288 pine saw log trees and pulpwood trees and all marked poplar trees, which said trees have been marked and designated by an agent of the SELLER by two yellow or white spots thereon, one of such spots being on the stump of such trees about six inches from the ground, and one of such spots being at shoulder height on such trees, all of which said marked timber has been pointed out, examined and understood by the undersigned purchaser; and

"Whereas, D. J. Patridge of Winona, Mississippi, hereinafter called the PURCHASER, has offered and agreed to pay to the SELLER the sum of five thousand dollars ($5,000.00) for such standing timber so marked and designated, under the following terms and conditions, to-wit:

"1. The PURCHASER agrees to pay the above designated purchase price in cash for such timber contemporaneously with the execution of this agreement.

"2. The PURCHASER agrees that such marked timber will be cut and removed from such land within a period of nine and one-half months from and after the date hereof and, upon failure to remove such timber within such period, all right, title and interest of the PURCHASER thereto shall cease and terminate and the

timber will revert to and become the property of the SELLER.

"3. The PURCHASER agrees that he will promptly pay all severance taxes due for such timber so cut and removed from said land and will cut and remove the same in accordance with good forestry practices so as not to unduly damage or destroy any of the timber or trees not marked and to be left upon such land.

"4. The PURCHASER agrees that if he, his agents or employees should unnecessarily cut, deaden or destroy any trees not so marked that he will pay, in addition to the consideration set forth above, to the SELLER the sum of fifteen dollars ($15.00) per tree as liquidated damages.

"5. (This paragraph was deleted).

"6. The PURCHASER agrees that all damage caused by him, his agents or employees to fences or other improvements upon said land shall be repaired or paid for at replacement cost by the PURCHASER.

"7. All camps, corrals or other structures or improvements erected upon the SELLER'S property by the PURCHASER shall be removed and the site shall be restored to a sanitary condition within thirty days after the termination of this contract.

"8. The location of any sawmill set on the property of the SELLER shall be approved in advance by the SELLER and all sawing refuse will be burned or left, according to the choice of the SELLER. A fire lane ten feet wide shall be constructed around the sawmill yard at a distance of at least thirty feet, but not more than one hundred feet from the mill site and cleared of all inflammable material except standing timber.

"9. The PURCHASER further agrees to provide and maintain adequate facilities for the prevention of forest fires upon said lands and to immediately suppress any fires originating from acts or negligence on the part of the PURCHASER or his agents and employees.

"10. The SELLER agrees that he will not conduct hauling operations upon said lands during extremely wet weather which would result in unnecessary damage to the land and that if any unusual or unnecessary damage should result to the lands due to his hauling during wet weather, he will repair such damage or pay to the SELLER the cost of repairing the same.

"11. It is mutually agreed and understood that all cutting and logging operations done by the PURCHASER under this contract shall be checked by a professional forester to be named and selected by the SELLER and that if any dispute arises between the PURCHASER and the SELLER with reference to such cutting and hauling operations, the decision of such forester shall be final and controlling upon both parties hereto.

"NOW, THEREFORE, in consideration of the purchase price hereinabove set forth and in consideration of the premises and covenants of the PURCHASER hereinabove set forth, the SELLER does hereby sell, convey and warrant unto the PURCHASER the marked saw log trees upon the land as hereinabove described, with the right to enter in and upon such lands and to cut and remove the same within a period of 9½ months from and after the date hereof, and the PURCHASER, by the acceptance of this conveyance in affixing his signature thereto, hereby accepts his obligation to comply with all the terms, conditions and provisions hereof.

"It is fully understood and agreed that the SELLER has made no representations or warranties as to the amount, quality or quantity of the timber contained in such marked trees, but that the PURCHASER has made his own examination and determination thereasto."

The trees were marked and counted by a forester employed regularly by A. Deweese Lumber Co., who made a mistake in adding up the number of trees marked. Neither appellant nor appellee was present at the marking and counting of the trees, but before the contract was entered into appellant went upon the land and inspected

and estimated the board feet contained in the marked trees and made an offer of $5,000.00 for them. Appellee made no estimate or inspection of the property and it is undisputed that appellee had the erroneous number of trees placed in the contract, not with any intention to defraud, but as a ceiling as to the maximum number of marked trees which could be cut. Prior to the marking, appellant had offered appellee $12,000.00 for all the timber on the land which offer was rejected because appellee did not desire to sell it all, but wanted it thinned out by selective cutting so as to turn the unmarked trees into a tree farm. It developed upon cutting the timber that it fell short of appellant's estimate and he brought this suit seeking a reformation of the agreement so as to permit him to cut and remove from the land a total of 4288 trees of like kind and quality as those which had been marked, or, in the alternative, for a judgment in the amount of $8720.81 representing largely the profit which he would have made if the number of trees set out in the contract had been marked.

Upon the trial the chancellor found as a fact that appellee intended to sell only the marked trees and no more, and that appellant intended only to buy the marked trees and no more; that appellee knew nothing about estimating timber and had it marked for the purpose of fixing the price he would take for the marked timber, which he wanted to sell; that appellant and his agent were experienced timber men and were able to and did make their own estimate of the marked timber and made their own determination as to whether or not the same was worth the price paid; that there was no fraud either in fact or in law; that the agreement was had between the parties before they attempted to name the number of trees which had been marked, and that the appellee intended to sell and the appellant intended to buy only the marked trees. Accordingly the chancellor dismissed the bill, from which action this appeal is taken.

Appellant has filed an excellent brief in which he relies principally on numerous rules for the construction of deeds and contracts. The chancellor did not disregard rules of construction but took the instrument as a whole and laid particular emphasis upon the last paragraph to the effect that the seller has made no representations or warranties as to the amount, quality or quantity of the timber contained in the marked trees, but that the purchaser has made his own examination and determination thereasto. ▮▮ ▮ We think that appellant's whole suit is bottomed upon an attempted repudiation of the paragraph mentioned, and that by that paragraph appellant is bound. The chancellor's findings are amply supported by the proof, and his decree will be affirmed.

Affirmed.

*Roberds, Lee, Holmes* and *Ethridge, JJ.*, concur.

### SUGGESTION OF DIMINUTION OF RECORD AND MOTION TO REQUIRE CLERK OF LOWER COURT TO SUPPLY OMISSIONS.

McGEHEE, C. J.

It appears on the face of the above styled suggestion and motion, of which opposing counsel have been given notice and to which they have made no reply, (1) that the chancery clerk failed to include in the record the copy of a notice filed with her and addressed to the court reporter to transcribe her notes and file the same with the clerk, and which notice to the court reporter was given within the time prescribed by law; (2) that a standing timber sales agreement between a seller and purchaser, which was introduced as an exhibit to the testimony of Tyler Holmes, but which is included in the record as an exhibit to the amended bill of complaint, was likewise omitted from the record except where it appears as such exhibit to the amended bill of complaint; (3) that said correspondence between the said Tyler

Holmes, attorney, and the appellee and his attorneys, and which correspondence was introduced as exhibits "B", "C", "D", "E", "F", "G", "H", "I" and "J" to the testimony of Tyler Holmes were entirely omitted from the record; (4) that a check of the appellant to the appellee in the sum of $5,000, instroduced as an exhibit to the testimony of the appellant, was also entirely omitted from the record; (5) that certain statements of lumber transactions introduced as exhibits to the testimony of one Herman Jenkins were likewise entirely omitted from the record; and (6) that the order adjourning the July 1954 term of the chancery court at which the case was tried and final decree rendered was likewise entirely omitted from the record.

▉▉ We were asked to enter an order or cause to be issued a writ of certiorari to require the clerk to supply these omissions. This suggestion of diminution of the record and motion to require the chancery clerk to supply the omissions are sustained ▉▉ except that she is not to be required to include in the record another copy of the standing timber sales agreement referred to as Item 2 above, since it appears that this agreement already appears as Exhibit A to the amended bill of complaint, as aforesaid. ▉▉ When any document has already been copied once in a record, it does not need to be copied again, or repeatedly copied, but it is only necessary that in the subsequent places in the record where the same is introduced or referred to, the clerk only need refer to it as previously copied. It is not incumbent upon this Court to read a document every time it appears in the record, and there is no point in a litigant being taxed with the cost incident to repeatedly copying the same as is done in many of the records received here on appeal.

The suggestion of diminution of the record and the motion to require the clerk to supply the omissions, except to the extent last above noted, will be and the same are hereby sustained.

All Justices concur.