TEMPLES, et al. *v.* FIRST NATIONAL BANK OF LAUREL, et al.

No. 41535 October 24, 1960 123 So. 2d 852

*Swep S. Taylor, Jr., Bonner R. Landman, W. B. Fontaine,* Jackson, for appellants.

448

*William S. Boyd, Jr., Thomas J. Holifield,* Laurel; *W. Calvin Wells, III, W. Calvin Wells, Jr., Martha W. Gerald,* Jackson, for appellees.

Holmes, J.

On January 16, 1959, the appellees, First National Bank of Laurel, The California Company, and M. W. Hill, filed their original bill in the Chancery Court of the Second Judicial District of Jones County against

the appellants asserting title to the minerals underlying 320 acres of land in Township 9, Range 11 West, Jones County, and seeking to cancel as a cloud upon their asserted title all claims of the appellants thereto. The appellants are the widow and children and sole heirs at law of G. L. Temples, deceased, who died intestate on March 2, 1940.

The appellants answered the original bill denying the alleged title of the appellees and claiming title to the minerals and seeking by cross-bill to cancel all claims of the appellees to the minerals involved and to have the title to said minerals confirmed in them. It is alleged in the original bill that the First National Bank of Laurel and M. W. Hill are the owners of certain mineral interests in the lands involved, and that the California Company is the owner of oil, gas and mineral leases executed by the First National Bank of Laurel and M. W. Hill conveying mineral interests in the lands described. After a full hearing on the merits, the trial court granted the prayer of the original bill and dismissed with prejudice the cross-bill of the appellants. From this decree the appellants prosecute this appeal.

The record discloses the following: On December 31, 1929, G. L. Temples was the owner of the fee simple title to the 320 acres involved. On that date he and his wife executed a deed of trust to A. B. Schauber, Trustee for the First National Bank of Laurel, securing an indebtedness of $1650, evidenced by their promissory note dated December 1, 1929, due one year from date, and any other indebtedness owing or to become owing by the grantors to the said bank. The note was not paid on its maturity date, December 1, 1930, and G. L. Temples and his wife executed a renewal note for $1650 dated December 1, 1930, and due December 1, 1931. A payment of $150 was made on this note and the balance became in default on December 1, 1931, when the said Temples and his wife executed a renewal note to the bank for $1500, dated December 1, 1931 and due September 15,

1933. This renewal note was not paid at its maturity and another one was executed for $1500 dated December 1, 1934 and due September 15, 1935. This last mentioned note was likewise not paid at maturity and another renewal note was executed dated October 15, 1936, and due on demand. Representatives of the bank identified all of these notes as being renewal notes and testified that upon any renewal the debtor was credited with the old note and charged with the new one, and the ledger account of the said G. L. Temples, which was introduced in evidence, so reflects.

On the date of the last renewal note, namely, October 15, 1936, G. L. Temples and his wife addressed the following letter to the Chancery Clerk of Jones County; ''Chancery Clerk

Jones County
Laurel, Mississippi
Dear Sir:

The First National Bank of Laurel, a corporation of Laurel, Mississippi, the beneficiary named in the Deed of Trust executed by me and my wife Tavie Temples on the 31 day of Dec., 1929 and recorded in your office in Record 25, page 194, has consented to the renewal and extension of the indebtedness secured thereby for 60 days from this date, and we therefore ask that you attest the memorandum of extension entered by said bank, or A. B. Schauber, the Trustee in the Deed of Trust, on the margin of said record in these words:

'This Deed of Trust is hereby renewed and extended for 60 days from this date by agreement between mortgagor and mortgagee. This, the 15 day of Oct., A.D., 1936.'

This shall be your authority for so doing.

Very truly yours,

Signed in the presence of: G. L. Temples
F. G. Amsler Tavie Temples
J. L. Sullivan''

On the margin of this letter is the following: "Entered on Record 12/9/36 - F. G. Amsler, A.C."

This renewal and extension, therefore, appears to have been entered on the record by Mr. Amsler, representing the bank, on December 9, 1936. Default was made in the payment of the aforesaid note dated October 15, 1936 and extended for sixty days, or to December 15, 1936, and the bank thereupon began foreclosure proceedings. The first notice of sale under the foreclosure proceedings appeared on October 30, 1937. The bank became the purchaser at the foreclosure sale and the entire property, that is, 320 acres, was conveyed by the trustee in the deed of trust to the bank under the date of November 22, 1937. According to the overwhelming proof, the bank went into possession of the property immediately, making conveyances of the surface of some of it and retaining mineral interests, and the bank and its successive grantees remained in possession of the property, leasing some of it, selling timber therefrom, and exercising acts of ownership over it, and paying taxes thereon up to the time of the institution of this suit on January 16, 1959, a period of over 21 years. During this period of time, according to the proof, none of the appellants claimed to be the owner of the property or asserted title thereto except through the bank. After the lapse of this period of over 21 years, the appellants, for the first time, asserted title to the property involved or the minerals therein, and they now attack the validity of the foreclosure sale upon the grounds that at the time of the foreclosure sale action on the note and on the deed of trust was barred by the statute of limitations.

The appellants argue that the debt became barred on December 1, 1936, or on December 15, 1936, the date to which the extension was noted on the margin of the record of the deed of trust. They therefore rely upon Section 743 of the Code of 1942, providing as follows: "The completion of the period of limitation herein prescribed to bar any action, shall defeat and extinguish

the right as well as the remedy; but the former legal obligation shall be a sufficient consideration to uphold a new promise based thereon.''

■■ ■ In other words, it is their contention that in any event the indebtedness was extended to December 15, 1936, and that this date marked the expiration of the period of limitation. Therefore, they say that the foreclosure sale was void because action on both the note and deed of trust was then barred by the statutes of limitation. They would be correct in their contention that the foreclosure sale was void because the bar of the statutes of limitation had already run on the debt and on the deed of trust but for the fact that the indebtedness from its original maturity date was renewed from time to time by new notes. Of course, if the statutes of limitation had run at the time of the sale both the right and the remedy on the note and deed of trust would have been extinguished and the sale would therefore have been void. The proof, however, does not support this contention. All of the renewal notes were executed prior to the running of the statutes of limitation. The acknowledgement of the indebtedness, executed and entered on the margin of the record of the deed of trust under date of October 15, 1936, was effective to start the running of the statutes of limitation anew from this day forward.

In 54 C.J.S., Limitations of Actions, Section 320(a), it is said: ''An acknowledgment or new promise fixes a point of time from which limitations begin to run anew, and an action commenced within the statutory time thereafter is not barred by limitations. If such acknowledgment or promise is made before the bar of the statute has become complete, it starts the statute anew from the date of the promise or acknowledgment and against the original claim, unless the new promise is intended by the parties to take the place of the original liability, in which case the period of limitation is determined by the character of the new promise.''

In 54 C.J.S., Limitations of Actions, Section 320 (c), appears the following: "A new promise renewing or extending a debt has the effect of extending a lien securing the debt as between the parties and as against subsequent liens taken before the renewed lien became barred where they were not foreclosed before the revival of the indebtedness. This is true at least where the new promise is made before the debt is barred, although no written agreement of extension is made in the manner prescribed by statute; . . ."

The appellants cite and rely upon Proctor v. Hart, 72 Miss. 288, 16 So. 595. In this case the indebtedness was not paid and a renewal note was executed but it was executed more than a year after the bar of the statutes of limitation had run. The Court said: "The controversy is limited to the single question necessarily involved in the demurrer, and lying on its face, viz: Was the vendor's lien revived by the execution of the note to the Harts after the bar of the statute of limitations had attached?" The Court held in the Proctor case that where a renewal note is executed after the bar of the statutes of limitation has attached, the execution of the renewal note does not serve to revive the lien by which it had originally been secured.

The appellants also cite in support of their contention the case of Perkins v. White, 208 Miss. 157, 43 So. 2d 897: The Court said in the opinion in that case the following:

"Under these statutes the remedy on the deed of trust became not only barred but completely extinguished on September 1, 1935, and, *in the absence of a renewal,* or institution of foreclosure proceedings, the power of sale and all other rights conferred by the deed of trust were utterly destroyed on that date." (Emphasis ours)

In 41 A.L.R. 822, the following annotation appears: "It appears to be generally held that a mortgage or deed of trust securing a bond or note is a mere incident thereof, and that consequently any payment on or

acknowledgment of the debt evidenced by the bond or note, which operates to suspend or interrupt the running of the Statute of Limitations thereon, or to revive the debt after it is barred, also tolls the Statute of Limitations as to the mortgage or deed of trust securing the debt.''

In 34 Am. Jur., Limitations of Actions, Section 294, page 237, appears the following: ''. . . . it appears to be generally held that an acknowledgment of the debt evidenced by the bond or note, which operates to suspend or interrupt the running of the statute of limitations thereon, or to revive the debt after it is barred, also tolls the statute of limitations as to the mortgage or deed of trust securing the debt. Similarly, if before a vendor's lien is barred by limitations, a new promise is made to pay the purchase-money debt, this will toll the running of the statute against the enforcement of the lien as against the purchaser.''

Of course the rule is well recognized that if no effort is made to renew or extend a note or mortgage securing the same until after the note is barred, the right and remedy as to the note and the mortgage is barred and cannot be revived by a new promise or acknowledgment of the debt. In the case before us, however, the new acknowledgments and new notes executed from time to time extended the maturity date of the indebtedness to December 15, 1936, and started the running of the period of limitations anew from that date. █ We have no hesitancy in holding, therefore, that on this record the note and deed of trust were clearly not barred at the time of the foreclosure and the foreclosure was valid and the bank acquired a fee simple title to the property involved.

 █ The foregoing conclusion disposes of this case favorably to the appellees, but we mention one other point. The appellees plead adverse possession. The proof is overwhelming that the bank, after purchasing the property at the foreclosure sale, went into the imme-

diate possession of the same and that the bank and its successive grantees have continued in the possession thereof throughout a period of more than 21 years, making conveyances of portions of the land, selling and cutting timber thereon, renting the same to tenants, paying taxes thereon, and exercising all acts of ownership throughout that period of time without any assertion of title on the part of the appellants. Appellants do not deny that the bank and its successive grantees have acquired the fee simple title to the surface of the land, but they say that this lawsuit involves the minerals, and that no title by adverse possession can be acquired to mineral interests where there has been a severance of the surface and mineral estates, and no act of possession such as drilling wells, digging mines, or capturing or taking possession of the minerals have transpired. However, there is a general rule that where there has been a severance of minerals by an adverse possessor the continued adverse possession of the surface by the severor or severee inures to the benefit of the severed mineral estate as against the true owner, whether the adverse possessor conveys the surface and reserves the minerals or keeps the surface and conveys the minerals.

The chancellor found from conflicting evidence that the bank and its successive grantees had exercised such possession over the land to the exclusion of all others as that the title has thereby become vested in these appellees. Directly in point and applicable to the facts of this case is the case of Carlisle, et al v. Federal Land Bank, et al, 217 Miss. 289, 64 So. 2d 142. On the issue of adverse possession the chancellor based his decision upon the Carlisle case and we think that case amply sustains the decision of the chancellor. There is not only substantial but overwhelming proof to support the finding of the chancellor on the issue of adverse possession. We think further that it is clear from the evidence in this case that at the time of the foreclosure

of the deed of trust the debt and the deed of trust were in full force and effect and that the foreclosure was in all respects valid. It is our conclusion, therefore, that the judgment of the court below should be and it is affirmed.

Affirmed.

*Hall, P. J.*, and *Lee, Ethridge* and *McElroy, JJ.*, concur.

## ON MOTION TO RETAX COSTS

Holmes, J.

The appellants have filed a motion to retax the costs in this case so as to disallow the chancery clerk's fees for including in the transcript certain instruments and documents consisting of process on defendants, subpoenas for witnesses, and duplication of instruments, all appearing more particularly as follows:

On pages 35, 36 and 37 are copies of summons and returns;

On pages 53, 54, 55, 56, 57, 58, 94, 95 and 96 are copies of subpoenas for witnesses;

A deed of trust shown on pages 29 and 30 is duplicated on pages 114, 115, 286 and 395;

A trustee's deed shown on pages 33 and 34 is duplicated on page 116;

A special warranty deed shown on pages 86 and 87 is duplicated on page 119'

An oil, gas and mineral lease shown on pages 22 and 23 is duplicated on page 161;

An oil, gas and mineral lease shown on pages 25, 26 and 27 is duplicated on page 162;

A deed shown on pages 82, 83, 84 and 85 is duplicated on page 164;

An extension agreement shown on pages 78 and 79 is duplicated on page 291.

458

It is manifest from the record that the inclusion of the foregoing in the transcript by the clerk of the lower court constitutes a violation of Rule 2 of the Revised Rules of the Supreme Court, and that the portions of the record hereinabove set forth should be eliminated therefrom in the taxation of the costs.

In the cases of Masonite Corporation v. Guy, 223 Miss. 8, 77 So. 2d 720, 78 So. 2d 579, Partridge v. McAtee, 225 Miss. 141, 81 So. 2d 714, 715, 82 So. 2d 711, and Huddleston v. Ada Mae Peele, 120 So. 2d 776, attention was called to the practice of some clerks in wholly disregarding Rule 2 of the Revised Rules of this Court. We again call attention to this practice and re-emphasize the need of including in the transcript of the record on appeal to this Court only such matters as are authorized under said Rule 2 of the Court.

It follows from what has been said that the motion of the appellants to retax the costs should be and the same is hereby sustained.

Motion to retax costs sustained.

*McGehee, C.J.,* and *Lee, Arrington* and *McElroy, JJ.,* concur.