419 So.2d 154 (1982)
FIRST NATIONAL BANK OF COLUMBUS
v.
Shelby DRUMMOND.
No. 53118.
Supreme Court of Mississippi.
August 18, 1982.
Paul S. Minor, Paul T. Benton, Biloxi, for appellant.
Jones, Maples & Lomax, F. Gerald Maples, Pascagoula, for appellee.
En Banc.
SUGG, Presiding Justice, for the Court:
This case was certified by the United States Court of Appeals for the Fifth Circuit *155 as authorized by Mississippi Supreme Court Rule 46. The certificate from the Court of Appeals, the style of the case, the questions certified, and exhibits follow as Part I. Our response to the questions follow as Part II.

PART I
CERTIFICATE FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF MISSISSIPPI
TO THE SUPREME COURT OF MISSISSIPPI AND THE HONORABLE JUSTICES THEREOF:
It appears to the United States Court of Appeals for the Fifth Circuit that this case involves a question of the law of the State of Mississippi which is determinative of an essential threshold issue for which we find no clear, controlling precedent in the decisions of the Supreme Court of Mississippi. We accordingly certify the questions of law infra, to the Supreme Court of Mississippi, requesting an answer based on the facts as recited.

1. Style of the Case.
The case in which this certificate is issued is entitled First National Bank of Columbus, Plaintiff-Appellant, v. Shelby Drummond, Defendant-Appellee, 642 F.2d 181 on the docket of the United States Court of Appeals for the Fifth Circuit and is an appeal from the United States District Court for the Southern District of Mississippi.

2. Statement of the Case:
On or about November 4, 1975, Shelby Drummond executed an instrument in favor of the First National Bank of Columbus, Georgia (the Bank), wherein he agreed to guaranteed payment of any loan, within a stated limit, which the Bank extended to J.C.H. Restaurants, Inc. D/B/A Brer Rabbit's. A copy of the instrument is attached as Exhibit "A."
On or about January 19, 1977, the Bank loaned J.C.H. Restaurants, Inc., the sum of $151,760 pursuant to an installment promissory note, a copy of which is attached as Exhibit "B."
Some payments were made after which J.C.H. Restaurants, Inc., defaulted and the collateral securing the loan was liquidated. A foreclosure sale was held on September 30, 1977. After applying the proceeds of the sale, there remained a net principal balance deficit of approximately $40,000.
The Bank was unsuccessful in its amicable demands for payment directed to J.C.H. Restaurants, Inc., and Shelby Drummond and it filed suit in federal district court on December 17, 1979. Jurisdiction was based on diversity of citizenship of the parties, the plaintiff bank being a national banking corporation with its office and place of business in Columbus, Georgia, and defendant being a citizen of the State of Mississippi. Attaching copies of Exhibits "A" and "B" the Bank sought judgment for $39,587.86 plus interest from September 30, 1977, attorney's fees and costs.
Shelby Drummond filed a Motion for Summary Judgment contending that the one year statute of limitations contained in Mississippi Code Anno., Section 15-1-23 (1972) controlled in this cause and that the action was barred because it was filed more than one year after the foreclosure proceeding. The district court agreed that Section 15-1-23 applied and held that the instant complaint was barred. The Bank's petition was dismissed with prejudice and it now appeals contending that the proper provision of Mississippi law to be applied in this instance is Section 15-1-49 (1972) which establishes a six year period of limitations for the filing of this suit.
Section 15-1-23 provides:
In all cases, no suit or action shall hereafter be commenced or brought upon any installment note, or series of notes of three or more, whether due or not, where said note or notes are secured by mortgage, deed of trust, or otherwise, upon any property, real or personal, unless the same is commenced or brought within one year from the date of the foreclosure or sale of the *156 property pledged as security for said note or notes.
Section 15-1-49 provides:
All actions for which no other period of limitation is prescribed shall be commenced within six years next after the cause of such action accrued, and not after.

3. Question to be Certified.
Which period of limitations applies to the instant fact situation, the one year period established by Section 15-1-23 (1972) or the six year period established by Section 15-1-49 (1972), of the Mississippi Code Annotated? Or is some other period of limitations applicable? Was the complaint by the Bank timely filed?
The entire record in this case, together with copies of the briefs of the parties, are transmitted herewith.

EXHIBIT A

GUARANTEE
GEORGIA, Muscogee COUNTY
In consideration of the sum of Five Dollars ($5.00) and other valuable considerations, as well as for the purpose of seeking to induce THE FIRST NATIONAL BANK OF COLUMBUS, GEORGIA, to extend credit to J.C.H. Restaurants, Inc. D/B/A Brer Rabbit's (hereinafter termed the "principal") or to renew or extend in whole or in part, loans or discounts already contracted by said principal, the undersigned (hereinafter termed the "guarantor") does hereby guarantee to said Bank and to its endorsers, transferees, successors or assigns, of either this guaranty or any of the obligations secured thereby, the prompt payment according to their terms of all obligations of the principal to the Bank of any kind or character, and does agree that if they, or any of them, are not so paid by the principal, the guarantor will immediately do so.
The obligations covered by this guaranty shall include all obligations of the principal to the Bank now existing or hereafter coming into existence and of renewals or extensions in whole or in part, of any of the obligations before described, together with all damages, losses, costs, interest, charges, expenses and liabilities of every kind, nature and description suffered or incurred by the Bank, arising in any manner out of or in any way connected with, or growing out of said indebtedness or liabilities of the principal to the Bank.
The liability of the guarantor hereunder is limited to the principal sum of Two Hundred Fourty Thousand and 00/100 ($240,000.00) Dollars.
This is a continuing guaranty and shall remain in force until a written notice revoking it has been received by the Bank; but such revocation shall not release the guarantor from its guaranty of all obligations of the principal (as herein before defined) then in existence, or from any renewals or extensions thereof, in whole or in part.
The undersigned hereby consent and agree that the Bank may at any time, either with or without consideration, surrender any property or other security of any kind or nature whatsoever held by it or by any person, firm or corporation on its behalf or for its account securing any indebtedness or liability covered by this guaranty or substitute any collateral so held by it for other collateral or like kind or of any kind without notice to or further consent from the undersigned and such surrender or substitution shall not in any way affect the liability of the undersigned hereunder.
Where the obligation hereby guaranteed is an obligation of a corporation, this guaranty is to cover all obligations to said Bank purporting to be made in behalf of such corporation by any officer or agent of said corporation without regard to the actual authority of such officer or agent. The term corporation shall include associations of all kinds and all purported corporations whether correctly and legally chartered and organized or not.
At the option of the Bank this may be treated as a guaranty or as a suretyship, with the right to proceed against the guarantor without first proceeding against the principal.
*157 The guarantor hereby waives notice of acceptance of this guaranty or of the creation or extension or renewal of any obligation of the principal to which it relates, or of any default by the principal. Guarantor agrees that no act or omission on the part of the Bank shall in any way affect or impair this guaranty. The guarantor hereby waives the right to require the holder of the obligation guaranteed to take action against the principal as provided for in Section 103-205 of the 1933 Georgia Code.
Where the guarantor is a natural person this agreement binds his heirs, administrators and executors, and where a corporation, its successors and assigns. Where signed by more than one guarantor, the singular term "guarantor" shall include the plural, and their obligation shall be joint and several.
This guaranty is made subject to all the terms, conditions, agreements or stipulations contained in the notes evidencing the obligations hereby guaranteed, and said guarantor further agrees that the terms, conditions and provisions of any notes which may be executed by the principal to evidence obligations in the future incurred, shall simultaneously with the execution of such notes, become a part of this guaranty, said guarantor hereby ratifying and confirming the agreements contained in said notes, both as to him or itself and any and all collateral in the possession of said Bank or which may hereafter, during the life of this guaranty, come into its possession securing either this obligation or any other obligation.
The undersigned and each of them waive and renounce each for himself and family any and all homestead or exemption rights either of us may have under or by virtue of the constitution or laws of Georgia, any other State or the United States, as against the liability and obligation hereby created; and do hereby jointly and severally transfer, convey and assign to the Bank or holder hereof a sufficient amount of any homestead or exemption as may be set apart in bankruptcy to pay this obligation in full, with all costs of collection; and each of the undersigned hereby directs the trustee in bankruptcy having possession of such homestead or exemption to deliver to the Bank a sufficient amount of property or money so set apart as exempt to pay the obligation hereby created.
WITNESS the signature and seal of guarantor this the 4th day of November, 1975.
 /s/ Wm. C. Sams, IV, MD (L.S.)
Signed before me 11-4-75. (name illegible) (L.S.)
(name illegible), Notary /s/ Shelby Drummond (L.S.)
Public, County Shelby,
State of Tennessee (name illegible) (L.S.)
My commission Expires (name illegible) (L.S.)
April 8, 1978 (name illegible) Notary 
 My Commission Expires February
 24, 1979 Nov. 4, 1975
 EXHIBIT B
 INSTALLMENT NOTE
$151,760.00 Columbus Georgia 1-19-77
FOR VALUE RECEIVED, I, or we, or either of us, promise to pay THE FIRST NATIONAL BANK OF COLUMBUS, GEORGIA, or Order, at its office in Columbus, Georgia, together with the current rate of exchange in the City of Columbus, Georgia and in lawful money of the United States, the principal sum of One Hundred Fifty One Thousand Seven Hundred Sixty and No/100 Dollars, with interest thereon from date hereof at the rate of 1 per cent per annum on the monthly unpaid balance until maturity, said principal sum being due and payable in 11 successive monthly installments of $2,000.00 each and in one (the last) installment of $129,160.00, the first principal installment being due and payable on the 3 day of February, 1977, and one of said principal installments, in the order set forth herein, being due and payable on the 3rd day of each succeeding calendar month thereafter, until said principal sum shall have been fully paid. Said interest thereon shall become due and payable in successive monthly installments on the same due dates as said principal installments set forth herein. (See attached list of stock)
Extra payments may be made at any time and interest will be charged only on the monthly unpaid balance. And, privilege is given to pay off in full this note/debt at any time before maturity, WITHOUT PENALTY.
*158 The holder of this note shall have the right to declare the same to be due, payable and collectible in advance of the dates named as its maturity dates upon the maker's or makers' (illegible) failure to keep the property described in the deed securing this note (should there be such a deed in existence) secured as provided therein or to produce the receipts therefor upon demand of the holder of this note and the said security deed, upon the maker's or makers' failure to pay any taxes or assessments levied upon the property described in the deed securing this note (should there be such a deed in existence) or to produce the receipts therefor upon the demand of the holder of this note and the said security deed, and upon the maker's or makers' failure to comply with any condition or stipulation contained in the deed securing said indebtedness (should there be such a deed in existence). Any failure to exercise said option (a) immediately shall not constitute a waiver of the right to exercise the same at any other subsequent time, without notice.
Said Bank is hereby expressly authorized to retain any general or special deposits, collateral, real or personal security, or the proceeds thereof, belonging to either of us now or hereafter in the possession of said Bank during the time this note remains unpaid and, before or after maturity hereof, may apply the same to this or any other debt or liabilities of either of us to said Bank, due or to become due.
I, or we, and each of us, whether principal, surety, guarantor, endorser, or other party hereto, hereby agree to be jointly and severally bound and I, or we, severally hereby waive and renounce, for myself/ourselves and family/families all homestead or exemption rights provided by the Constitution and laws of Georgia or any other State of the Union, as against the payment of this note/debt or the interest thereon and of any renewal thereof and extension thereof, and constitute the holder of this note, as my/our attorney in fact in case of bankruptcy to claim all homestead and exemption allowed by law, and do hereby severally transfer and assign to the holder of this note all homestead exemption rights to which we, or either of us, may be entitled, and I, or we, hereby direct any trustee in bankruptcy to transfer to said attorney in fact all homestead or exemption allowed, and hereby authorize said attorney in fact to sell said homestead or exemption allowed, at public or private sale, with or without notice, and apply the proceeds of said sale, first towards the payment of this note, and any balance, to the party for whose benefit said homestead or exemption are set apart. I, or we, or either of us, further waive demand, protest, and notice of demand, protest and non-payment of this note and each and every installment due thereunder.
Time is of the essence of this note and each and every installment therein, and in case this note is collected by law or through an attorney at law, I, we, or either of us, agree to pay all costs of collection, including fifteen (15) per cent of the principal and interest, as attorney's fees.
Should said note or any of said installments, including principal and interest, not be paid when due, they shall bear interest at the rate of eight per cent, per annum from maturity, said interest being due and payable monthly.
Given under the hand and seal of each party the day and year first above written.

No. 62996 1974 J.C.H. RESTAURANTS, INC. (L.S.)
Due 3rd
 (Name illegible) V.P. (L.S.)
 Peachtree Mall, 3111 Manchester Express
 31902

PART II
The question certified is controlled by our decision in W.T. Raleigh Co. v. Fortenberry, 138 Miss. 410, 103 So. 227 (1925). In Raleigh the principal debtor had obligated himself to Raleigh on an open account. The guarantors had obligated themselves to Raleigh on a separate contract of guaranty[1] which follows:

*159 For and in consideration of the W.T. Raleigh Company extending credit to the abovenamed second party, we, the undersigned, do hereby jointly and severally guarantee unto said the W.T. Raleigh Company unconditionally the full and complete payment to said company of any and all indebtedness incurred under the terms of the above and foregoing instrument by the second party named as such therein and to all of the terms, provisions, and agreements contained in said instruments we fully assent, waiving acceptance of this contract of guaranty and all notices of any nature whatsoever, and agree that the written acknowledgment by second party of the amount due on his account, or that any judgment rendered against him for moneys due the company shall in every and all respects bind and be conclusive against the undersigned. And we further agree that in any suit brought on this contract of guaranty by the company no other or further proof shall be required of it, than to establish the amount or sum of money due and owing to it from the said second party and when so proven shall be conclusive and binding upon us, and that any extension of time shall not release us from liability under this contract of guaranty. (138 Miss. at 416, 103 So. at 229)
The trial court held that the action was barred by the three year statute of limitations covering suits on open accounts under section 3099 Code of 1906, Section 2463 Hemingway's Code [Now section 15-1-29 Mississippi Code Annotated (1972)]. On appeal by Raleigh, this Court reversed and remanded holding that the suit was based on the written guaranty which in explicit and unmistakable terms obligated appellees to pay the indebtedness sued for.
The principle expressed in Raleigh, supra, was followed in Alexander v. Carsley, 199 Miss. 881, 25 So.2d 709 (1946) in a suit by Alexander against Carsley and the surety on his official bond. The suit was for personal injuries inflicted by Carsley in the exercise of his authority and duties as a member of the State Highway Patrol. The trial court held that the suit was barred by the one year statute of limitations covering actions for assault and battery. Section 732, Code of 1942 [now section 15-1-35 Mississippi Code Annotated (1972)]. This Court reversed and remanded holding the six year statute of limitations (section 15-1-49) applied because the suit was upon the bond which was in writing. Although Alexander involved a suit on a surety bond rather than a guaranty contract, by analogy the holding in Alexander with reference to limitations of actions applies in this case.
Although Drummond does not address Raleigh, supra, in his brief, he argues that section 15-1-3[2] Mississippi Code Annotated (1972) applies and extinguishes the right of First National. The same argument was made in Raleigh, supra, when the appellees argued in their brief that the right of Raleigh was extinguished because the remedy, that is the suit on open account, was barred, and, therefore, the contract became void. Section 2479 Hemingway's Code (now section *160 15-1-3). The Court rejected the argument by holding that suit on the guaranty was not barred by the three year statute of limitations which applies to open accounts.
In the case before the Court, section 15-1-3 applies only to the makers of the note and extinguished the right as well as the remedy of First National to proceed against the makers of the note who were the principal debtors. The suit in this case was not on the note of the principal, but as in Raleigh, was on the separate guaranty contract.
We also considered whether the guaranty contract was an attempt by First National to change the limitations prescribed by section 15-1-5 Mississippi Code Annotated (1972).[3] The statute does not apply because the guaranty contract did not attempt to change the time of limitations of actions as prohibited by 15-1-5, but is a separate contract subject to the six year statute of limitations. Section 15-1-49.
Appellee relies on the case of Hawkins v. Southern Pipe and Supply, Co., Inc., 259 So.2d 696 (Miss. 1972) and Musser v. First National Bank of Corinth, 165 Miss. 873, 147 So. 783 (1933). These cases do not apply because they did not involve the obligation of a guarantor under a contract of guaranty separate and distinct from the obligation of the principal debtor.
In response to the questions certified, we hold:
(1) The six year statute of limitations, Section 15-1-49 applies to this case;
(2) No other statute of limitations applies; and
(3) The complaint was timely filed by the Bank.
Having responded to the questions certified, we direct that the entire record, including copies of the briefs submitted to this Court, be transmitted to The United States Court of Appeals for the Fifth Circuit.
PATTERSON, C.J., WALKER, P.J., and BROOM, ROY NOBLE LEE, BOWLING, and PRATHER, JJ., concur.
DAN M. LEE and BOWLING, JJ., dissent.
HAWKINS, J., took no part.
DAN M. LEE, Justice, dissenting:
Being unable to agree that the question certified is controlled by our decision in W.T. Raleigh v. Fortenberry, 138 Miss. 410, 103 So. 227 (1925), and being thoroughly convinced that the questions presented to us as are correctly stated in Part I of the opinion written by Justice Sugg, are controlled by Mississippi Code Annotated sections 15-1-21, 15-1-23 and 15-1-3 (1972) together with the decisions of this Court thereunder, I disagree. Basically, the crux of applying Raleigh to the case sub judice is that Raleigh, for all that it may stand for had nothing whatever to do with filing a suit for a deficiency left over after a foreclosure on collateral. Raleigh dealt with a question of whether the three-year statute on open accounts would lie or a six-year statute on written contracts where there was no mortgage or collateral pledged to pay the debt. There being no collateral or mortgage involved, no foreclosure involved, then there was no question about there being a suit for a deficiency of that part of the debt that remained after the foreclosure which would activate section 15-1-21 which is as follows:
When a mortgage or deed of trust shall be given on real or personal estate, or when a lien shall be given by law, to secure the payment of a sum of money specified in any writing, an action or suit or other proceedings shall not be brought or had upon such lien, mortgage, or deed of trust to recover the sum of money so secured except within the time that may be allowed for the commencement of an action at law upon the writing in which *161 the sum of money secured by such lien, mortgage, or deed of trust may be specified. In all cases where the remedy at law to recover the debt shall be barred, the remedy in equity on the mortgage shall be barred. (emphasis ours.)
Section 15-1-23 deals directly with the problem here involved, thereby reducing the six-year statute of limitations on a written note which is secured by a mortgage, deed of trust or otherwise, unless the same is commenced or brought within one year from the date of the foreclosure or sale of the property pledged as security for said note or notes. Section 15-1-23 is quoted in full as follows:
In all cases, no suit or action shall hereafter be commenced or brought upon any installment note, or series of notes of three or more, whether due or not, where said note or notes are secured by mortgage, deed of trust, or otherwise, upon any property, real or personal, unless the same is commenced or brought within one year from the date of the foreclosure or sale of the property pledged as security for said note or notes. (emphasis ours.)
Section 15-1-23 was originally passed in 1934 during the great depression when most people were facing financial ruin that brought on many foreclosures and tax sales which, perhaps, explains the reason for its passage.
This Court has passed upon section 15-1-23 and its predecessor (section 720 Miss. Code 1942, chapter 251 of the Laws of 1934) in the case of Guthrie v. Merchants National Bank of Mobile, 254 Miss. 532, 180 So.2d 309 (1965), where an action for deficiency on a note instituted almost four years subsequent to the date of sale of security therefor, was barred by the statute of limitations providing that action for balance due under the note must be brought within one year from date of sale of security given under chattel mortgage. The Court went on to say, speaking through Justice Brady, as follows:
It was also pointed out in that suit that, in an action on a contract, the statute of limitations of the state where the suit is brought governs. The suit at bar was brought in this state and its laws govern and control. There was no absence from this state, and more than a year had elapsed since the cause of action accured; thus the suit was barred by Mississippi's one year limitation, section 720, and appellant's fifth instruction should have been granted. If this be an austere rule that is wanting in justice, then section 720 presents a problem for legislative consideration and correction. It is beyond the cable tow of judicial remedy. (254 Miss. at 545, 180 So.2d at 315  emphasis ours.)
If there is any doubt as to what is meant in the last two lines of section 15-1-21, which two lines are, "In all cases where the remedy at law to recover the debt shall be barred, the remedy in equity on the mortgage shall be barred," then one can turn to section 15-1-3 which clearly states:
The completion of the period of limitation prescribed to bar any action, shall defeat and extinguish the right as well as the remedy. However, the former legal obligation shall be a sufficient consideration to uphold a new promise based thereon.
This Court has passed upon section 15-1-3 on many occasions. In Proctor v. Hart, 72 Miss. 288, 16 So. 595 (1894), the effect of the statute is not only to deny the remedy and bar the action, but to extinguish the right itself upon the completion of the period of limitation. When a secured debt is barred, both the right and remedy are extinguished. McDaniel v. Short, 127 Miss. 520, 90 So. 186 (1921).
In Musser v. First National Bank of Corinth, 165 Miss. 873, 147 So. 783 (1933), where neither the notes nor the mortgage were renewed until the notes were barred, the rights and remedies as to both notes and mortgage were barred and could not be revived. In Temples v. First National Bank of Laurel, 239 Miss. 446, 123 So.2d 852, 125 So.2d 543 (1960), the Court held the running of limitation extinguishes both the note and the deed of trust securing it.
*162 The clear distinction in the case sub judice from that of Raleigh, supra, is that no collateral or mortgage was given in Raleigh and therefore no foreclosure by Raleigh, which brought into play sections 15-1-21, 15-1-23 and 15-1-3. In the case sub judice, there was collateral given to secure the note and there was a foreclosure thereon which netted the appellant the sum of $112,372.14 on the $151,760 note which foreclosure was more than one year prior to the bringing of this suit for the sum of $39,387.86, the deficiency remaining after the foreclosure. If this was not a deficiency suit after the foreclosure, I would agree that Raleigh would apply.
The question in Raleigh was whether or not the written contract, or bond, came within a specific statute of limitations, which was six years, or was an open account for which the three-year statute of limitations would apply, and whether the debt that the bond sought to insure was described in the bond. The Court in Raleigh decided the question based upon the statute of frauds and held that the bond or contract was governed by the six-year statute of limitations. This Court, in W.T. Raleigh Co. v. Fortenberry, 138 Miss. 410, 103 So. 227 (1925), stated as follows (entire opinion quoted):
ANDERSON, J. (after stating the facts as above). The three-year statute of limitations (section 3099, Code of 1906; section 2463, Hemingway's Code) provides as follows
"Actions on an open account or stated account not acknowledged in writing, signed by the debtor, and on any unwritten contract, express or implied, shall be commenced within three years next after the cause of such action accrued, and not after."
Appellees contend, and the court below so held, this to be an action on an open account not acknowledged in writing signed by the debtor. While appellant's position is that the basis of the action is the guaranty contract, Exhibit B to the declaration, and that the account between appellant and Fortenberry, the principal, made Exhibit C to the declaration, is not the basis of the action, but simply embodies part of the evidence necessary to make out a case under the guaranty contract, and therefore the six-year statute of limitations governs, and not the three-year statute. We think this question is settled in favor of appellant's contention by Vicksburg Water Works Co. v. Y. & M.V.R.R. Co., 102 Miss. 504, 59 So. 825. The promise to pay, which was the basis of that suit, was in writing and therefore provable by writing, but the amount to be paid was not in writing but rested in parol. The court said, touching this question, that the action was predicated on a written contract, and the three-year statute of limitations had no application, notwithstanding the written contract left the amount of water furnished to be ascertained by parol evidence. Although the following cases are not squarely in point, they go to sustain appellant's contention. Cock v. Abernathy, 77 Miss. 872, 28 So. 18; Masonic Benefit Ass'n v. Bank, 99 Miss. 610, 55 So. 408; Washington v. Soria, 73 Miss. 665, 19 So. 485, 55 Am. St. Rep. 555.
Appellees, to sustain their position, rely principally on Foote v. Farmer, 71 Miss. 148, 14 So. 445, and Hembree v. Johnson, 119 Miss. 204, 80 So. 554. There is no conflict between those cases and Vicksburg Waterworks Co. v. Y. & M.V.R.R. Co., supra. In the Foote-Farmer Case, the court held that where a person secured an advance of money by giving an order for delivery of a county warrant for a certain amount, the cause of action upon its nondelivery was not based on such order as being in itself a promise to pay, or an acknowledgment in writing of an account due, but that the action was based on an unwritten contract and governed by the three-year statute of limitations (section 2670, Code of 188). It was stated in the opinion in that case that in order to take the case out of the three-year statute it was necessary that the writing, promising to pay the indebtedness, should be in such terms "as to render any supplementary evidence unnecessary." *163 The court in the use of that language, however, had no reference to the amount of indebtedness involved in that case. The question alone discussed, and decided was whether the written order on which the suit was based was a sufficient promise to pay any amount whatever. The question whether, if the promise to pay had been sufficient, the amount to be paid could be fixed by parol evidence was not before the court nor discussed.
In the Hembree-Johnson Case the court held that the recital in a deed of trust that it was given to secure a fixed sum of money, and in addition "any further indebtedness due the said Oscar Johnson that may accrue during the year by reason of advancement made to said T.L. Hembree and wife," was not a written promise by the grantors in the deed of trust to pay such open account. The court said in part:
"We have carefully considered the terms and phraseology of the deed of trust here involved, and we fail to find any promise to pay, or any acknowledgment of the indebtedness contained therein, except the $800 note."

There was no sort of obligation or promise by the defendant in the writing involved in either one of those cases to pay the indebtedness sued for. Instead, in each of those cases, the writing relied upon simply recited a fact, not a promise.

Under the statute of frauds, a promise to answer for the debt of another need not describe with minute particularity such debt, such contracts like all others are to be read in the light of surrounding circumstances, and, where with their aid or the aid of other writing the debt may be identified with reasonable certainty, the memorandum will be deemed sufficient. 25 R.C.L. p. 649, § 280. If a writing be sufficient to meet the requirements of the statute of frauds, we think it is such a written contract as will be governed by the six-year statute of limitations.

We hold that the suit here is on the guaranty bond; that said bond is the basis and foundation of the recovery sought; that the bond, in explicit and unmistakable terms, obligated appellees to pay the indebtedness sued for. It is true that the bond itself does not name the amount for which the appellees are liable, but it points with certainty where and how that amount may be ascertained by parol testimony. It follows from these views that the judgment of the court below must be reversed. (138 Miss. at 420-422, 103 So. at 229-230)
Thus, it is seen that Raleigh turns on the question of whether the writing was sufficient to satisfy the statute of frauds when assuming the debt of another. The Court held that the writing was adequate and described the debt bonded sufficiently.
The bottom line of the question certified by the Fifth Circuit Court of Appeals to this Court is, do we have statutes or decisions that limits the time within which to bring a suit for a deficiency after a foreclosure on collateral that did not bring enough money to pay off the indebtedness that it secured. If we do have such a statute, it would be a special statute and of course would control over a Mother Hubbard statute, such as Mississippi Code Annotated section 15-1-49 (1972), which is as follows:
All actions for which no other period of limitation is prescribed shall be commenced within six years next after the cause of such action accrued, and not after.

We do have a statute controlling this very exact question, section 15-1-23, and it has been properly interpreted by this Court as shown hereinbefore. This statute is specific in that a suit must be brought within one year after a foreclosure. This suit was not brought within the one year Guthrie, supra; Musser, supra, and Temples, supra.
The First National Bank of Columbus elected its remedy, to foreclose upon the property, receiving $112,372.14 at the foreclosure sale, then failed to file suit for a deficiency within the statutory period of time as specified by section 15-1-23.
Section 15-1-49 sought to be applied by First National Bank of Columbus excludes *164 itself by its own terms. This section provides that "all actions for which no other period of limitation is prescribed shall be commenced within six years." We do have such a statute, section 15-1-23, supra, whichis a specific statute dealing with the length of time required within which a litigant may institute a suit for a deficiency judgment after a foreclosure sale, the specific question involved here. Therefore, we cannot resort to a Mother Hubbard statute, section 15-1-49.
The chapter dealing with statutes of limitations may be found in Volume 5, Mississippi Code Annotated (1972), beginning with section 15-1-1 and running through section 15-1-79. All one has to do to determine whether section 15-1-23 or section 15-1-49 applies is to read sections 15-1-3, 15-1-21, 15-1-23 and 15-1-49 in that order for brevity. They are copied in full as follows:
§ 15-1-3.
The completion of the period of limitation prescribed to bar any action, shall defeat and extinguish the right as well as the remedy. However, the former legal obligation shall be a sufficient consideration to uphold a new promise based thereon.
§ 15-1-21.
When a mortgage or deed of trust shall be given on real or personal estatse, or when a lien shall be given by law, to secure the payment of a sum of money specified in any writing, an action or suit or other proceedings shall not be brought or had upon such lien, mortgage, or deed of trust to recover the sum of money so secured except within the time that may be allowed for the commencement of an action at law upon the writing in which the sum of money secured by such lien, mortgage, or deed of trust may be specified. In all cases where the remedy at law to recover the debt shall be barred, the remedy in equity on the mortgage shall be barred. (emphasis ours.)
§ 15-1-23.
In all cases, no suit or action shall hereafter be commenced or brought upon any installment note, or series of notes of three or more, whether due or not, where said note or notes are secured by mortgage, deed of trust, or otherwise, upon any property, real or personal, unless the same is commenced or brought within one year from the date of the foreclosure or sale of the property pledged as security for said note or notes. (emphasis ours.)
§ 15-1-49.
All actions for which no other period of limitation is prescribed shall be commenced within six years next after the cause of such action accrued, and not after.
First National Bank of Columbus elected the remedy of foreclosing upon the collateral that secured the note of $151,760. The First National Bank received $112,372.14 at this foreclosure sale, leaving a balance of $39,387.86 which it sought to collect by filing suit more than one year after the foreclosure sale. The bank, having elected this remedy, is bound thereby. See 53 C.J.S., Limitations of Actions section 7, page 926, which is as follows:

As a general rule, where a party has two or more remedies for the enforcement of a right, the fact that the statute of limitations had cut off one or more of them does not bar the other or others, but where the statute of limitations is held to bar the right as well as the remedy, as discussed supra § 6, a statute of limitations which bars the legal remedy bars the equitable one at the same time. Where a plaintiff has elected one of two remedies for the enforcement of a right, and such action is barred by the statute, he is bound by his election, and cannot thereafter resort to the other remedy for which a different limitation is provided. (emphasis ours.)
Had the bank not foreclosed upon the collateral securing the $151,760 note, there would be no question but that the six-year statute of limitations would apply to the written note and the written guaranty. However, when the bank elected this remedy to foreclose and did in fact foreclose, *165 section 15-1-23 applied. This is the major distinguishing factor in Raleigh and the case sub judice.
The bank, upon the $151,760 note becoming due, could have called upon the five guarantors (who incidentally were the incorporators of J.C.H. Restaurants) who mortgaged the property to First National Bank of Columbus to secure the loan for $151,760 and simply stated to them: "Gentlemen, you have a problem and we have your security. Just pay us under your guaranty agreement and you can take a J.C.H. Restaurant and all the collateral and get as much as you possibly can for it. But pay us under the note and guaranty. In other words, you take the gamble, Mr. Guarantors, not us." In that event, section 15-1-23 would not apply.
The facts here are that First National Bank of Columbus elected to foreclose upon the collateral, did sell the collateral, but did not get enough from the sale of the collateral to satisfy its entire indebtedness. It simply fell short by the sum of $39,487.86. Its remedy was to file a suit against the guarantors within one year after such foreclosure and there could have been no question that judgments could have been rendered. The bank did not do this but waited more than the one year permitted by our statute. Thus, it lost its right as well as its remedy. So says our statute.
I therefore would adopt Part I of the opinion of Justice Sugg wherein it sets out the question certified and exhibits that are being interpreted in connection with this case.
However, I would change Part II of the opinion. The question certified is controlled by our section 15-1-3, section 15-1-21 and section 15-1-23 set out above.
These sections have been interpreted to the effect that the statute is not only to deny the remedy and bar the action, but to extinguish the right itself upon the completion of the period of limitation. Musser v. First National Bank of Corinth, 165 Miss. 873, 147 So. 783 (1933); Greene v. Greene, 145 Miss. 87, 110 So. 218 (1926); McDaniel v. Short, 127 Miss. 520, 90 So. 186 (1921); Proctor v. Hart, 72 Miss. 288, 16 So. 595 (1894). Section 15-1-49 does not apply.
In response to the question certified, in my opinion, we should hold:
1. The one-year statute of limitations, section 15-1-23 applies to this case;
2. No other statute of limitations applies; and
3. The complaint was not timely filed by the bank.
Having responded to the questions certified, we then should direct that the entire record, including copies of the briefs submitted to this Court, be transmitted to the United States District Court of Appeals for the Fifth Circuit.
BOWLING, J., joins this dissent.
NOTES
[1] The contracts of guaranty in Raleigh, supra, and the case before the Court fulfill the requirements of a guaranty contract set forth in Brent v. National Bank of Commerce of Columbus, 258 So.2d 430, 434, (Miss. 1972):

[A] guaranty contract possesses the following characteristics: (1) A guarantor is secondarily liable to the creditor on his contract and his liability is fixed only by the happening of the prescribed conditions at a time after the contract itself is made; (2) the contract of a guarantor is separate and distinct from that of his principal, and his liability arises solely from his own contract, although its accrual depends on the breach or performance of a prior or collateral contract by the principal therein; (3) a guarantor enters into a cumulative collateral engagement, by which he agrees that the principal is able to and will perform a contract which he has made or is about to make, and that if he defaults the guarantor will, on being notified, pay the resulting damages  i.e., a guarantor is an insurer of the ability or solvency of the principal, although this characteristic is not present in an absolute guaranty or a guaranty of payment, but only in a conditional guaranty or a guaranty of collection; and (4) except where the guaranty is absolute, generally the guarantor is entitled to notice of the default of the principal.
[2] The completion of the period of limitation prescribed to bar any action, shall defeat and extinguish the right as well as the remedy. However, the former legal obligation shall be a sufficient consideration to uphold a new promise based thereon.
[3] The limitations prescribed in this chapter shall not be changed in any way whatsoever by contract between parties, and any change in such limitations made by any contracts stipulation whatsoever shall be absolutely null and void, the object of this section being to make the period of limitations for the various causes of action the same for all litigants.